## Commonwealth *v.* McCloud, Appellant.

Submitted December 9, 1970. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Edward H. Weis* and *John W. Packel,* Assistant Defenders, and *Vincent J. Ziccardi,* Defender, for appellant.

*James D. Crawford,* Deputy District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., March 23, 1971:

A complaint was filed against Charles A. McCloud on March 28, 1967 charging him with the use and sale of narcotics on August 8, 15, and 24, 1966. On April 3, 1967, he was arrested.

Prior to trial, McCloud made a motion to dismiss the indictments contending that the delay from the time of the alleged first sale of narcotics, August 8, 1966,

to the day of his arrest, April 3, 1967, was in violation of his constitutional right to a speedy trial under the Sixth Amendment and to due process of law under the Fifth Amendment to the Constitution of the United States, as applied to the states through the Fourteenth Amendment.

The lower court disagreed and McCloud stood trial without a jury. The trial court found him guilty of the charges against him and he has now appealed, contending his motion to dismiss the indictments should have been granted and that the court below failed to consider sufficiently the constitutional issue raised by him.

Defendant relies heavily on the opinion of the United States Court of Appeals for the District of Columbia in *Ross v. United States,* 349 F. 2d 210 (D.C. Cir. 1965), holding that the pre-arrest delay of seven months was, in that case, violative of the defendant's constitutional rights. However, that decision, as has been repeatedly pointed out by subsequent cases hereafter discussed, was based on a situation not here present, namely, on the weakness of the identification testimony which consisted solely of the testimony of one police officer who had no personal recollection of the incident in question, having participated in a substantial number of virtually identical transactions in a short period of time during which he had only one brief encounter with the defendant. The officer in the *Ross* case relied heavily during his court testimony on entries in his notebook made by him at the time of his only purchase of narcotics from defendant. The recurring spectacle of convictions based on such identification testimony caused the concern expressed in the *Ross* opinion and resulted in the holding that the defendant's rights had been violated by such procedure. As stated in *United States v. Napue,* 401 F. 2d 107 (7th Cir. 1968), cert. denied, 393

U.S. 1024, 89 S. Ct. 634, rehearing denied, 393 U.S. 1112, 89 S. Ct. 858, the Court in the *Ross* decision "was concerned about a pattern of cases and its supervisory responsibility for criminal proceedings involving the District of Columbia Metropolitan Police force." In fact, as noted in *Whitted v. United States,* 411 F. 2d 107 (9th Cir. 1969), "The Court [in *Ross*] sidestepped the question of due process and put its holding on the basis of its inherent supervisory power in criminal matters."

All of the cases subsequent to *Ross* clearly interpret that decision as applicable only to its particular fact situation and not controlling where the identification testimony is strong and definite. In *Wilson v. United States,* 409 F. 2d 184 (9th Cir. 1969), cert. denied, 395 U.S. 983, 89 S. Ct. 2146 (1969), the Government agent made a purchase of narcotics on July 7, 1967; defendant was not indicted until November 14, 1967, and was not arrested until January 31, 1968. The officer's testimony and recollection of events were independent of any notes and records he had made and there was evidence to show that he had ample opportunity to make a careful identification. Also, two other witnesses identified the defendant and subsequently corroborated other portions of the officer's account of the narcotics sale. The Court there distinguished *Ross* on the strength of the identification testimony and held the pre-arrest delay not violative of the defendant's constitutional rights.

In the present case, Agent Wilder, who made the purchase from defendant, used his notes only to refresh his memory as to the times of purchase, but his identification testimony was positive and given without the aid of notes: "BY THE COURT: Q. You could identify him as Charles McCloud? A. Yes, I could. BY MR. CAPONE: Q. When did you identify McCloud as the man named in the warrant? A. Prior to the

start of the investigation, our information was that Mc-Cloud was a peddler in the area. He was identified, not only by name, but we also had his photograph, prior to going on the street before the investigation was initiated against him. Q. From the time you made the last buy, which would be August of 1966, up until you saw McCloud at the magistrate's hearing—I assume you were present? A. Yes, I was. Q. Did you see him in between that time? A. Yes, I did. Q. On how many occasions? A. I would say at least two dozen. Q. Under what circumstances, just walking on the street? Or in prison? A. No, no. He was on the street. Q. Did you have him under surveillance? A. Well, there were other peddlers in this area and there were some occasions I would go to this location and after making three purchases from McCloud, that was sufficient. And there were times I had to dodge him. In other words, I had to go around to get to some of the other peddlers."

Defendant McCloud was further identified by Agent Young, one of the two undercover surveillance officers in the investigation. Agent Young testified he witnessed Agent Wilder's contacts with the defendant, though from his position of surveillance he could not see the actual transfer of the drugs. Agent Bitzer, the other undercover surveillance officer, was also available for similar identification testimony. Further, and of great importance, is the fact that defendant was also identified by the informant Douglas Martin who was present at the time of the sales and who had known defendant for over thirty years. It is clear that the identification testimony in this case was in no way weakened by the pre-arrest delay.

Where the identification testimony is so substantial and definite, the conviction has been sustained despite the pre-arrest delay: *United States v. Childs*, 415 F. 2d

535 (3d Cir. 1969); *Jordan v. United States,* 416 F. 2d 338 (9th Cir. 1969); *United States v. Napue,* supra. In *Dancy v. United States,* 395 F. 2d 636 ( D.C. Cir. 1968), the court responsible for the *Ross* decision refused to follow it where, as here, there was a greater degree of substance to the undercover agent's identification.

It is clear, therefore, from a study of the *Ross* decision and the subsequent cases distinguishing it, that in the determination of the legal consequences of a pre-arrest delay on an accused's rights to a speedy trial and to due process, an assessment of the identification testimony and the effect of the delay on such identification are governing factors. In the case now before us there was no danger of misidentification stemming from the pre-arrest delay. The identification testimony was strong and substantial and in no way weakened by the delay in arrest.

The decisions recognize, some expressly, others implicitly, that a proper balance must be struck between defendant's right to identification testimony of probative value and the public's right to effective police detection and control of the trafficking in narcotics. In *Dancy v. United States,* supra, the court which handed down the *Ross* decision clearly noted that, "The police are carrying increasingly heavy responsibilities for the protection of the public interest, and they deserve and require greater resources of all kinds" and upheld the defendant's conviction despite a claim of an unconstitutional pre-arrest delay.

In the instant case, the delay in the arrest was not occasioned merely by police reluctance to terminate the usefulness of a particular undercover agent. Untimely disclosure not only would have terminated the usefulness of Agent Wilder, but also the usefulness of the informant Douglas Martin, who was involved in twenty

other cases. This was a distinction well noted in *United States v. Napue,* supra, the Court there stating: "The identity of not only the undercover agent, but also that of the informant, required protection. When the informant was murdered, the need for protection terminated, and the defendant was arrested." In the case now before us, defendant was quickly charged and arrested as soon as the investigation was completed of the other twenty cases in which Agent Wilder and the informant were involved.

The record reveals no evidence of prejudice such as would outweigh the reasonableness of the delay necessitated by the conduct of an effective investigation. Although defendant first claimed, in the court below, that he was not required to show prejudice, and that it was sufficient merely to show the delay, he did proceed, however, to present testimony that because of the passage of time he could not remember what he was doing on August 8, 15, and 24, the dates of the purchases. He testified, however, with certainty that he was working on those days and that, "I have never seen that man (Agent Wilder) before". He denied ever selling drugs to anyone in the presence of the informant. Such a record does not support a claim of prejudice. In *Wilson v. United States,* supra, the Court observed that: "Under the Ross rule the reasonableness of the police conduct in the particular case is to be weighed against the possible prejudice to the defendant. 349 F. 2d 212-213 . . . appellant does not show that his defense was prejudiced by the delay. His defense was a general denial that he had ever seen Abbey, that he knew Bishop, or that he had sold narcotics to anyone since his release from prison. He did testify that he could not remember where he was on July 7, 1967. However, in this case, the danger of misidentification was extremely remote."

In *Dancy v. United States,* supra, the District of Columbia Circuit Court, interpreting its own *Ross* decision, found no necessity to reverse the conviction because "appellant has advanced no peculiarly prejudicial consequences of that delay other than his general inability to reconstruct the events of the day of the alleged sale." The same conclusion was reached in *Jordan v. United States,* supra.

It is also to be noted that although defendant testified he was at work on the days in question, he made no attempt to reconstruct or account for those days by introducing work records or the like. This failure on the part of the defendant was found to be fatal to the claim of prejudice in the case of *United States v. Childs,* supra.

Where the identification testimony is strong, as it was in this case, defendant's claim of prejudice must be supported by stronger evidence than would be the case where the identification testimony is weak, as it was in the *Ross* case. *Jordan v. United States,* supra.[1]

In *Whitted v. United States,* supra, as in the case now before us, "Agent Coonce . . . testified from memo-

---

[1] In that case the Court quoted from the dissenting opinion of then Judge BURGER of the United States Court of Appeals for the District of Columbia in *Woody v. United States,* 370 F. 2d 214 (1966): "The application of Ross to a particular case turns on three operative elements: (1) the *length* of the purposeful delay; (2) the *basis* of the identification of the defendant; and (3) the claimed *effect* of the delay in rebutting the identification, i.e., the resulting prejudice. It is the existence of a purposeful delay and a Ross-type identification that permits a lesser degree of prejudice to reverse; without those factors the narcotics defendant would be required to show substantial and specific prejudice. Thus, the shorter the period of delay or the better the method of identification, the greater the prejudice which must be shown.

"Ross recognized that there was a crucial need as well as a valid purpose for undercover narcotics investigations and that some purposeful delays between the offense and the arrest were inevitable."

ry to substantially all the facts with the exception of the need to refresh his memory as to the exact day and time . . . Agent Westrate corroborated the details of date, time and identification of the appellant.

"Appellant took the witness stand and denied the sale to Coonce. In an apparent attempt to show prejudice because of the pre-arrest delay, he testified that he could not remember the events of the evening in question because of the lapse of time (eight months by the time of trial). He was sure, however, that he had worked at his regular employment that day. . ."

After an excellent review of the *Ross* opinion and the facts on which it was based, together with a review of the subsequent cases in which the *Ross* decision was not followed by the very court which had pronounced it, the Court in *Whitted,* concluded: "It is evident that appellant's reliance on Ross is misplaced. Agent Coonce testified from his independent recollection as to the pertinent facts of the incident and he positively identified Whitted. Agent Westrate corroborated the identity and substantial portions of the testimony of the incident. There was a good cause for the delay, as the officers were attempting to get evidence against other violators of the narcotics laws."

We, therefore, affirm the action of the court below in refusing to grant defendant's motion to dismiss the indictments and in refusing to grant defendant a new trial. The fact that the court below in its opinion did not discuss defendant's claim of prejudice and merely held the *Ross* decision to be inapplicable, without further elaboration, does not justify a reversal or remand as defendant suggests. Defendant was afforded and availed himself of an opportunity to both claim and prove prejudice at the evidentiary hearing granted him on his petition to dismiss and at his trial. That proof was not legally sufficient to support a finding of preju-

dice which would outweigh the reasonableness of the delay occasioned by effective investigation involving not only the investigative agent but an informant as well.

The judgment of sentence is affirmed.