Commonwealth, Appellant, *v.* Barnes.

Argued March 18, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Bonnie Brigance Leadbetter,* Assistant District Attorney, with her *Steven H. Goldblatt,* Assistant District Attorney, *Abraham J. Gafni,* Deputy District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellant.

*Jack M. Myers,* with him *Zack, Myers & Atkinson,* for appellee.

OPINION BY PRICE, J., December 1, 1975:

This case reaches us as an appeal by the Commonwealth from the lower court's grant of a motion in arrest of judgment in favor of the appellee, Russell Barnes. We agree with the Commonwealth's allegations of error, and therefore, will reverse.

The Commonwealth's evidence at trial consisted of the testimony of Special Investigator Carl M. Anderson of the Pennsylvania Department of Justice. In his capacity as undercover agent assigned to the Pennsylvania Crime Commission, Anderson was responsible for approximately sixteen drug-related arrests in the Philadelphia area in

September, 1973. Anderson testified that on the evening of March 20, 1973, he met with his informant, Henry Bradley, and appellee's co-defendant, Walter Drake. When informed that Anderson was interested in purchasing narcotics, Drake replied that he had a cousin in South Philadelphia, named Russell, who would be willing to sell heroin. Anderson, Drake and Bradley drove to a bar in the area of 21st and Reed Streets in South Philadelphia. While Anderson waited in the car, Bradley and Drake entered the bar, and returned in the company of another man, later identified as Russell Barnes, the appellee. Appellee agreed to sell a quantity of heroin to Anderson for $1500, whereupon Anderson followed appellee in his car to 50th and Locust Streets. The sale was consummated one block away, at 50th and Irving Streets.

Testifying for himself, appellee denied ever having seen Anderson, Drake or Bradley, other than in the courtroom. He also denied ever having used, possessed or sold narcotics. Drake testified that he had never known the appellee, although he did admit to knowing Bradley. Despite diligent efforts by both state and federal governments to locate Bradley, his whereabouts were unknown to the Commonwealth at the time of trial, and he did not testify.

At the close of trial, after the appellee had testified, the lower court judge asked that Agent Anderson be recalled. The court asked Anderson whether he had made written reports contemporaneously with the transactions, and when Anderson answered in the affirmative, he asked Anderson to produce those reports on the following day. When trial resumed the next day, Anderson testified that he had been unable to find the original reports and that they had apparently been destroyed. He was, however, able to produce typewritten reports which had been transcribed from the originals. The lower court then found the appellee guilty of manufacturing, delivering, or possession with the intent to manufacture or deliver

heroin, and the appellee filed motions for a new trial and in arrest of judgment. The motion in arrest of judgment was granted.

In his opinion filed pursuant to Rule 46 of the Superior Court Rules, the lower court judge proffered two reasons in support of his order. The first was that the evidence was insufficient to support the conviction. This conclusion depends upon the credibility of Agent Anderson, as the lower court judge realized. When, at the conclusion of trial, the judge found appellee guilty, he expressly relied on Agent Anderson's credibility. In the opinion, filed nearly six months after the verdict was rendered, the court attacked the Crime Commission's system as affecting Anderson's credibility while praising Anderson's work as an agent. This change of heart will not justify the court's order, however, for the rule is well established that in passing upon the propriety of a motion in arrest of judgment,

> " 'the sufficiency of the evidence must be evaluated upon the *entire trial record.* All of the evidence must be read in the light most favorable to the Commonwealth and it is entitled to all reasonable inferences arising therefrom. The effect of such a motion is to admit all the facts which the Commonwealth's evidence tends to prove. (citations omitted) Also, in passing upon such a motion, all evidence actually received must be considered, whether the trial rulings thereon were right or wrong.' " *Commonwealth v. Terenda,* 433 Pa. 519, 523, 252 A.2d 635, 637 (1969), quoting from *Commonwealth v. Tabb,* 417 Pa. 13, 16, 207 A.2d 884, 886 (1965). (emphasis in original)

Thus, Agent Anderson's testimony must be regarded as credible, and in that light, the evidence was sufficient to support the conviction.

In the post-trial hearing on the motion, held nearly two months after the trial, the lower court judge revealed the true basis of his reasoning:

"In view of the fact that I had myself conducted some perhaps extra-judicial investigations in this matter, and also because of the fact I have had Agent Anderson testify in some other matters growing out of the very same raids, and in at least one of the others I found that Agent Anderson did have something by way of original records that were produced, used to corroborate to some extent.

I just think, basically, the question is a matter of fair play. If I convict this defendant, I am going to send him to jail and I don't like this procedure, I don't like the answers that I got from the Crime Commission when I spoke to Mr. Boyle, when I spoke to his subordinates who informed me in a kind of fashion that didn't satisfy the Court that procedures were followed that would insure to a defendant some basic rights. This defendant may be guilty as sin, only he knows that, but I'm sorry, I am not satisfied myself.

I have thought a lot about this and I am not going to send this man to jail on the basis of what I have. The motion in arrest of judgment is granted. I feel you handled the case marvelously, but when I am told by Agent Anderson's superiors that he was given information that he need not keep the records, when he did apparently in others, I think it's an outrage. The Crime Commission is not yet, to my knowledge, beyond the reach of the Courts of Law. I just think fair play dictates that defense counsel and defendants are entitled to something to be used as the basis of arriving at the truth.

Incidentally, I was very impressed, and have been impressed, with Officer Anderson. I just feel that a system here was used that doesn't satisfy this Court.

MISS FRANKEL: It's a motion in arrest that is granted?

THE COURT: If I allowed a new trial he is not going to find those records, they are not available, and

I don't think it's appropriate to place on another judge the same problem." [NT 5-7]

The trial court's reliance on off-record matters in granting the motion in arrest of judgment was clear error. The error was compounded by the fact that the off-record matters consisted, in part, of an independent investigation conducted by the trial judge. Such independent fact-finding has been strongly disapproved of by our supreme court. *See Commonwealth v. Minnick*, 432 Pa. 462, 247 A.2d 569 (1968).; *Commonwealth v. Zaffina*, 432 Pa. 435, 248 A.2d 5 (1968); *Commonwealth ex rel. Green v. Rundle*, 413 Pa. 401, 196 A.2d 861 (1964).

In *Commonwealth v. Jackson*, 223 Pa. Superior Ct. 497, 302 A.2d 420 (1973), the lower court believed that evidence admitted at trial should have been excluded. The court granted a motion in arrest of judgment for the following reasons: "the interest of justice, as represented by avoidance of a retrial which would lack sufficient evidence for conviction, avoidance of further burdens upon a defendant whose constitutional rights have been seriously violated, and fairness in the judicial process." 223 Pa. Superior Ct. at 499, 302 A.2d at 422. This court reversed the lower court's order because none of the court's stated reasons appeared on the face of the record.

Similarly, in this case, the facts uncovered in the lower court's extra-judicial investigation do not appear on the face of the record and cannot be relied upon as grounds for an order arresting judgment.

The lower court's second reason for granting the motion in arrest of judgment is that the pre-arrest delay was prejudicial to appellee, in that he was thereby deprived of Anderson's original records and of the testimony of Henry Bradley. The delay between the sale and the arrest was approximately six months. Agent Anderson testified that the reason for the delay was to protect his "cover" and that of the other investigators with whom he worked. In addition, the record supports the inference

that the pre-arrest delay was necessary to protect Anderson's informant, Henry Bradley. It is instructive to note that as soon as the arrests involved in this investigation were made, Bradley vanished.

This court has previously considered the effect of prejudice resulting from pre-arrest delay. In *Commonwealth v. McCloud*, 218 Pa. Superior Ct. 230, 275 A.2d 841 (1971), the court's analysis involved two balancing tests. First, "a proper balance must be struck between defendant's right to identification testimony of probative value and the public's right to effective police detection and control of the trafficking in narcotics." 218 Pa. Superior Ct. at 235, 275 A.2d at 844. The second balance weighed the prejudice to the defendant against "the reasonableness of the delay necessitated by the conduct of an effective investigation." 218 Pa. Superior Ct. at 236, 275 A.2d at 844. In that case, the court held that the pre-arrest delay did not violate due process because the Commonwealth produced strong identification testimony and because the justifications offered for the delay outweighed the prejudice to the defendant.

The second case in which this question was considered was *Commonwealth v. De Rose*, 225 Pa. Superior Ct. 8, 307 A.2d 425 (1973). In that case, a pre-arrest delay of approximately twenty-two months was held to violate due process. The defendant was accused of bribery and corrupt solicitation. The only witness to the alleged incident was unable to remember the exact words used or the specific date on which the offense took place, facing the defendant "with over a one month period of accountability." 225 Pa. Superior Ct. at 14, 307 A.2d at 429. Furthermore, the Commonwealth offered no justification or excuse for the delay.

We believe that the present case is closer to *McCloud* than to *De Rose*. Although appellee was identified only through Agent Anderson's uncorroborated testimony, the identification was certain and independent of notes or

records made contemporaneously with the event. This is in contrast to *Ross v. United States*, 349 F.2d 210 (D.C. Cir. 1965), where the testifying officer had no actual present recollection of the defendant's identity, but drew his testimony from entries in a notebook. Furthermore, appellee was given a specific date when the incident was alleged to have occurred, March 21, 1973, and thus was not faced with an unreasonable period of accountability.

With respect to the second balance, we fail to perceive any prejudice to the appellee. Even if we were to accept appellee's argument, the prejudice, if any, would be so slight as to be outweighed by the Commonwealth's interest in the delay. This court has expressly upheld the legitimacy of the justifications offered by the Commonwealth for the delay in this case. *Commonwealth v. McCloud, supra.* Appellee argues that the pre-arrest delay resulted in the disappearance of the informant, Henry Bradley, thus depriving him of the right to cross-examine. However, in all probability, Bradley would have disappeared shortly after the arrests, whenever they were made. Bradley's protection, as established by this record, was one of the valid considerations for the delay. In addition, as admitted by appellee's counsel, Bradley's attendance at trial would only have had an effect, if at all, on credibility. Bradley would either have supplemented Agent Anderson's testimony, or he would have detracted from it. While his absence *may* have been prejudicial to appellee, we do not believe that the prejudice was sufficient to outweigh the Commonwealth's reasons for the delay.

Finally, appellee contends that the pre-arrest delay deprived him of the use of Agent Anderson's original records, which were destroyed after being transcribed. However, appellee did have the use of the transcribed records. Again, appellee does not propose any specific prejudice that resulted from his inability to use the records. While he *may* have suffered some prejudice from

the absence of the records, we do not believe that the prejudice outweighs the Commonwealth's interest in effective investigation.

The order of the lower court arresting judgment is reversed, the judgment is reinstated, and the case is remanded for sentencing.

CERCONE, J., concurs in the result.