381 A.2d 472

**COMMONWEALTH of Pennsylvania**

v.

**Peter S. CLUCK, Appellant.**

Superior Court of Pennsylvania.

Submitted June 16, 1976.

Decided Dec. 2, 1977.

230

Alan Ellis, State College, for appellant.

Robert A. Mix, Assistant District Attorney, Bellefonte, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

█ The instant appeal arises from appellant's conviction for violating The Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–101 (1977) (Hereinafter, CSDD & C). In particular, the jury found appellant guilty of sale at retail of a nonproprietary drug. *Id.* at § 780–113(a)(10). On appeal appellant argues: (1) The Commonwealth permitted an unreasonable period of time to elapse between the date of the offense and the date of appellant's arrest; (2) The Commonwealth improperly permitted testimony concerning an out-of-court photographic identification; (3) The Commonwealth improperly concealed the existence of a promise to its principal witness of leniency in return for testimony against appellant; and, (4) The Commonwealth failed to prove that appellant's conduct was proscribed by the terms of the CSDD & C, 35 P.S. § 780–113(a)(10). Since we disagree with those of appellant's arguments which are properly before us on this appeal, we will affirm.[1]

Prior to October 31, 1973, a former boyfriend of Susan Dunkle contacted her and asked her to arrange for him to purchase cocaine. At first Miss Dunkle, who was a student at Penn State, declined to get involved, but eventually she succumbed to her friend's persistence and agreed to try to arrange a drug transaction. On October 31, 1971, Miss

---

1. Appellant also contends that he is entitled to arrest of judgment because the Commonwealth's proof at trial did not conform to the allegations in the indictment. The indictment charged appellant with delivery of lidocaine hydrochloride, "a controlled substance," while the proof at trial showed that lidocaine hydrochloride was not a controlled substance but, rather, a "nonproprietary drug," the sale of which is also proscribed by the Act. Whatever the dubious merit of this argument, we need not decide it herein, because counsel did not raise it in post-trial motions. *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974).

Dunkle met her friend, who was accompanied by two other persons, and the group proceeded by automobile to 1915 North Oak Lane in State College, Pennsylvania. Miss Dunkle was to act as the agent for the three in purchasing the cocaine while they waited outside in the car; she did not know that her companions were in fact undercover agents for the Pennsylvania Department of Justice. The purchase was to be ten grams of cocaine for $550; and the sale was consummated, after some haggling over the price, when appellant agreed to accept $550. Miss Dunkle paid appellant the $550 she had received from her companions, and appellant delivered to her ten individually wrapped packets of what he purported to be cocaine. Subsequent chemical analysis revealed that the substance was lidocaine hydrochloride rather than cocaine.

This episode was part of larger investigation, coincidentally, of appellant's sister and brother-in-law, who were suspected to be trafficking in narcotics from their business place, a gift shop called the Lazy-J.[2] Not wishing to reveal the identity of their undercover agents, and thereby eliminate their chances of succeeding in the larger investigation, the police postponed arresting Miss Dunkle. However, in the spring of 1974 Miss Dunkle was arrested and charged with possession of lidocaine hydrochloride. Since it was her first offense of any kind, and she was a student working her way through college, on June 26, 1974 the court accepted a recommendation of probation without verdict. CSDD & C, 35 P.S. § 780–117. The court established a one-year probationary period, set a fine of $200, and ordered Miss Dunkle to pay the costs of prosecution, a sum which included the $550 expended by the Commonwealth to make the drug purchase. However, when counsel explained to the court that Miss Dunkle's agreement to purchase the drugs was wholly gratuitous so that she had received no part of the purchase money, the court stated that the costs would be

2. We say "coincidentally" because the undercover agents did not know the identity of the person from whom Miss Dunkle had purchased the ersatz cocaine until some eight months after this particular sale.

reduced by $550 if Miss Dunkle testified at the expected trial of the person from whom she purchased the lidocaine hydrochloride.[3]

By November, 1974, the Commonwealth's investigation of the Lazy-J had terminated, and appellant's identity had been established. Appellant was then arrested and charged with sale at retail of a nonproprietary drug, and theft by deception.[4]

■ Appellant first maintains that the lengthy delay of one year between the occurrence of the offense charged and his arrest denied him due process of law.[5] Appellant alleges that his defense was damaged by the delay because he was unable to reconstruct his activities on the night in question, October 31, 1973.

In *Commonwealth v. McCloud,* 218 Pa.Super. 230, 235, 275 A.2d 841, 844 (1971) we recognized that "a proper balance must be struck between defendant's right to identification testimony of probative value and the public's right to effective police detection and control of the trafficking in narcot-

**3.** Although Miss Dunkle had already provided the given name and address of the man from whom she bought the drugs, apparently the Commonwealth had not then established that appellant had been the seller.

**4.** At trial, the court sustained appellant's demurrer to this latter charge.

**5.** Appellant's challenge to the pre-arrest delay does not raise a Sixth Amendment, speedy trial question. As the Supreme Court stated in *United States v. Marion,* 404 U.S. 307, 321–22, 92 S.Ct. 455, 464, 30 L.Ed.2d 468 (1971): "Until [arrest] occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusation; his situation does not compare with that of a defendant who has been arrested and held to answer. Passage of time, whether before or after arrest, may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself. But this possibility of prejudice at trial is not itself sufficient reason to wrench the Sixth Amendment from its proper context. Possible prejudice is inherent in any delay, however short; it may also weaken the Government's case. * * * There is thus no need to press the Sixth Amendment into service to guard against the mere possibility that pre-accusation delays will prejudice the defense in a criminal case since statutes of limitation already perform that function."

ics." Into the balance, given some prejudice to the defendant, must be put "the reasonableness of the delay necessitated by the conduct of an effective investigation." *Id.* 218 Pa.Super. at 236, 275 A.2d at 844. In *McCloud,* this court upheld the conviction because the identification testimony was strong and the Commonwealth's justification for the delay was reasonable. Compare *Commonwealth v. DeRose,* 225 Pa.Super. 8, 307 A.2d 425 (1973). In the instant case, Miss Dunkle had been acquainted with appellant prior to conducting a drug transaction with him, and her testimony in court was strong and sure. In addition, eight months of the one year between the offense and appellant's arrest elapsed before the Commonwealth learned appellant's identity; and, as the Commonwealth explained, appellant was not then arrested because of his close relationship to the targets of the larger investigation, his sister and brother-in-law. In light of the foregoing, the lapse of one year between the offense and appellant's arrest did not deny him due process of law. See also *Commonwealth v. Barnes,* 237 Pa.Super. 407, 352 A.2d 107 (1975); *Commonwealth v. King,* 234 Pa.Super. 247, 338 A.2d 621 (1975); *Commonwealth v. Butler,* 232 Pa.Super. 283, 331 A.2d 678 (1974).

■ Appellant next argues that he is entitled to a new trial because of Miss Dunkle's reference to a photographic identification she had made of appellant prior to trial. The testimony challenged is reported as follows:

"Q. At what time did you go to Mr. Kerr's [a narcotics agent] office?

A. Sometime after my trial. Probably within a week.

Q. And what did you do then?

A. I talked to him and recalled the whole incident again and had about—he had about six pictures and I told him that Peter was in the pictures.

MR. ELLIS: Objection, Your Honor. May we approach the bench?"

The photographs to which Miss Dunkle referred were never displayed, marked as exhibits or otherwise offered into evidence at trial. In *Commonwealth v. Allen,* 448 Pa. 177,

292 A.2d 373 (1972) our Supreme Court recognized that a testimonial reference to a photograph is reversible error if a jury could reasonably infer prior criminal activity by the accused from the reference. The Court hastened to add, however:

"A mere passing reference to photographs from which a reasonable inference of prior criminal activity cannot properly be drawn does not invalidate the proceedings since there has been no prejudice as a result of the reference . . ." *Id.* 448 Pa. at 181, 292 A.2d at 375.

We find that the reference to photographs in the instant case was not the type from which the jury could reasonably infer prior criminal conduct. Indeed, this case poses less chance for prejudice than did *Commonwealth v. Carlos,* 462 Pa. 262, 341 A.2d 71 (1975) where the Supreme Court, in affirming the judgment of sentence, stated:

"In other words, aside from the fact that a police detective displayed the photograph, there was nothing else linking it to the police. It is highly unlikely that a juror would conclude from this alone that Carlos (defendant) had engaged in prior criminal conduct. Thus, 'there was nothing that should reasonably suggest to a jury that the photographs were obtained by police officials as a result of defendant's prior criminal activity.'" *Id.* 462 Pa. at 266, 341 A.2d at 73. [Citations omitted.]

Compare *Commonwealth v. Taylor,* 460 Pa. 616, 334 A.2d 261 (1975).

■ Appellant next argues that he is entitled to a new trial because the Commonwealth failed to inform the jury that, at her "guilty plea" hearing which resulted in probation without verdict, Miss Dunkle was promised a reduction of $550 in the costs of prosecution in return for her testimony at appellant's trial. Appellant maintains that the Commonwealth's failure to take the initiative in disclosing this to the jury brings him within the holding of *Commonwealth v. Kurtz,* 219 Pa.Super. 1, 280 A.2d 410 (1971). We disagree.

Miss Dunkle's testimony concerning her "guilty plea" was as follows:

"Q. After your arrest in March of 1974, were you contacted by the Bureau of Drug Control in an attempt to ascertain from whom you had purchased these drugs?

A. Yes.

Q. And prior to your guilty plea, did you cooperate with them?

A. No.

Q. Did you have an attorney at the time?

A. Yes.

Q. Who was that?

A. James Jubelirer.

Q. Did you subsequently agree to cooperate with the Bureau of Drug Control?

A. Not actually agree to, no.

Q. Do you recall the circumstances under which you gave them information concerning who you had bought the drug from?

A. Yes. I went up to Mr. Kerr's office and talked to him; and he had—

Q. Excuse me. Prior to actually going to Mr. Kerr's office, were there any arrangements made the day of your guilty plea?

A. No arrangements, no."

In light of this testimony, *Commonwealth v. Kurtz,* supra is inapposite. *Kurtz* involved a situation where two of appellant's accomplices testified for the Commonwealth and lied concerning whether leniency had been promised in return for their testimony. Although the prosecutor knew that a bargain had, in fact, been struck with the witnesses, the bargain was never brought to the attention of the judge, sitting without a jury, or defense counsel. Hence, *Kurtz* fell clearly within the prohibition laid down by the Supreme Court in *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

At least two factors distinguish this case from *Kurtz* and *Napue,* however. In the first place, there was no induce-

ment for Miss Dunkle to prevaricate; she had already received probation without verdict, and the court's promise to reduce costs $550 was in return for her testimony at appellant's trial, ostensibly, regardless of its content. This was not a situation where the court held the sword of discretionary sentencing over a witness' head prior to his testifying. Thus, in that sense, Miss Dunkle's testimony that no arrangement had been made was not even false. Secondly, and most importantly, defense counsel had been provided with a transcript of the hearing, including the judge's promise to reduce the costs, prior to trial. Defense counsel could have read the relevant portions of the hearing into the record if he wished; and, we do not interpret our decision in *Kurtz* to require the Commonwealth to supply this information to the jury when the defense already has it in its possession in such a readily usable fashion. Hence, neither *Kurtz* nor *Napue* require that appellant receive a new trial.

 Appellant's closing argument, to be sustained, requires an exceedingly technical reading to the CSDD & C, 35 P.S. § 780–113(a)(10); appellant argues that, because his sale of the lidocaine hydrochloride took place through an intermediary, Miss Dunkle, for delivery to the undercover agents in the waiting automobile, it was not a sale "at retail." Presumably, appellant fancies himself a wholesaler.

In pertinent part Section 113(a)(10) of the Act provides: "The following acts and *the causing thereof* within the Commonwealth are prohibited:

. . . . .

The sale at retail of a non-proprietary drug except by a registered pharmacist in a licensed pharmacy or by a practitioner . . ." [Emphasis added.]

Of course, we are mindful of our obligation to construe this penal statute strictly. The Statutory Construction Act, 1 Pa.C.S. § 1928(b)(1) (Supp.1976). The Pennsylvania Rules of Criminal Procedure, Rule 3(k) defines Penal Laws as including

"all statutes and embodiments of the common law which establish, create or define crimes or offenses including any ordinances which may provide for imprisonment upon conviction or upon failure to pay a fine or penalty."

Although the particular subsection under which appellant was charged does not incorporate the penalty for its violation, it is nevertheless a penal law because it establishes and, in part, defines the crime. Such statutes must be strictly construed in order that a court will not create offenses which the legislature did not intend to create,[6] especially since such offenses are paradigm examples of *ex post facto* laws.[7] In addition, strict construction protects against giving a penal law such breadth of application that it is rendered unconstitutionally vague.[8]

"[S]trict construction is a means of assuring fairness to persons subject to the law by requiring penal statutes to give clear and unequivocal warning in language that people generally would understand, as to what actions would expose them to liability for penalties and what the penalties would be." 3 Sutherland Statutory Construction § 59.03 (4th ed. 1974).

Thus, any ambiguity concerning the ambit of a penal statute must be resolved in favor of life and liberty. *Commonwealth v. Exler*, 243 Pa. 155, 162, 89 A. 968 (1914). See also *Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971).

Notwithstanding this limitation on our construction of the statute in question, we agree with the Commonwealth that appellant clearly fell within its proscription.

6. 3 Sutherland, Statutory Construction § 59.03 (4th ed. 1974).

7. *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).

8. A statute is unconstitutional if it is vague with respect to either the persons subject to prosecution, *Lanzetta v. New Jersey*, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939); the conduct forbidden, *Interstate Circuit, Inc. v. City of Dallas;* or, the punishment to be applied, *United States v. Evans*, 333 U.S. 483, 68 S.Ct. 634, 92 L.Ed. 823 (1948).

First, Miss Dunkle did not purchase the drugs from appellant for *resale* to the narcotics agents, she purchased them for delivery to the narcotics agents. As such she was merely an agent herself for the buyers, who were, of course, the intended consumers. Hence, appellant's sale of lidocaine hydrochloride was no less a sale at retail than a sale which occurs when one sends his child to the market for groceries. Furthermore, the Act as quoted above clearly prohibits "the causing . . . of a sale at retail." Even if Miss Dunkle had been purchasing the drug for resale, by providing it to her for that purpose, appellant would have caused the sale to occur, and likewise have been guilty of violating the act. Hence, appellant's argument that the statute in question was designed only to prohibit the unauthorized practice of pharmacy and, as such, does not apply to him is specious.

For the foregoing reasons the judgment of sentence is affirmed.

SPAETH, J., files a concurring opinion in which HOFFMAN, J., joins.

SPAETH, Judge, concurring:

I join Judge CERCONE's opinion, except in one respect.

I do not agree that *Commonwealth v. Kurtz,* 219 Pa.Super. 1, 280 A.2d 410 (1971), is distinguishable. In my opinion, under it the Commonwealth was obliged to disclose to the jury the arrangement with Miss Dunkle; I think the lower court meant, and Miss Dunkle understood it to mean, that costs would be reduced if, and only if, she testified in support of the Commonwealth. Thus she had at least a $550 inducement to lie. I cannot understand, or accept, the statement that "Miss Dunkle's testimony that no arrangement had been made was not even false." Opinion by CERCONE, J., at 237.

The only reason I nevertheless join in the order affirming the judgment of sentence is that appellant's counsel knew or should have known all about the arrangement. Query

whether he was ineffective, *i. e.,* had any reasonable basis for not disclosing it to the jury.

HOFFMAN, J., joins.