394 A.2d 591

**COMMONWEALTH of Pennsylvania**

v.

**Curtis SANDERS, Appellant.**

Superior Court of Pennsylvania.

Submitted June 12, 1978.

Decided Nov. 22, 1978.

Richard P. Hunter, Jr., Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, and Edward G. Rendell, District Attorney, Philadelphia, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

HESTER, Judge:

This is an appeal from a judgment of sentence of the Court of Common Pleas of Philadelphia County. Appellant was convicted of burglary and criminal conspiracy and thereafter filed Post-Verdict Motions which were denied. A sentence of 2–10 years was imposed. This appeal followed.

Appellant initially argues that the trial court improperly denied his motion to dismiss informations for failure of the Philadelphia police to proceed diligently with his arrest. Appellant presented this motion (commonly called a "Ross Motion") prior to trial and a hearing was held thereon.

The criminal incident in this case took place on October 24, 1975, when Mary Jackson was brutally raped in her apartment in North Philadelphia. The victim identified the appellant as being in her apartment during the rape, at a photographic display immediately after the crime. Donald Snelling, who was apprehended shortly after the crime and charged with rape, also identified appellant as being in the apartment during the rape. However, appellant was not arrested until May 4, 1976.

Appellant asserts that the long delay between the date of the alleged crime and his arrest was a result of a lack luster effort by the Philadelphia police and that delay, caused appellant severe prejudice, in that he was unable to recall any of his actions on the day the crime was committed and therefore was unable to adequately defend himself.

In order to determine whether the Commonwealth has unreasonably delayed the arrest of a suspect after occurrence of the criminal event, we must balance the reasonableness of the delay against the prejudice to the

defendant. *Ross v. United States,* 121 U.S.App.D.C. 233, 349 F.2d 210 (1965). *Commonwealth v. De Rose,* 225 Pa.Super. 8, 307 A.2d 425 (1973).

At the hearing held prior to trial, to determine the cause of the delay, four Philadelphia police officers testified as to their actions relative to the apprehension of the appellant. Officer Ligato testified that on October 24, 1975, the victim made a complaint that someone named "Donnie" had raped her and that someone named "Lee" was also present. The victim then led Officer Ligato and Detective Hall to a house on Brown Street where "Donnie" Snelling lived. Officer Ligato and Detective Hall than arrested Snelling on a charge of rape following a positive I.D. by the victim. Officer Ligato then took the victim back to Central Detectives where she viewed a book of photographs of black males. She picked out Curtis Lee Sanders' picture and positively identified him as one who was involved in the rape. Officer Ligato then let Snelling look at the pictures and he identified Sanders as being in the room at the time of the rape. Officer Ligato also testified that he and Detective Hall went to a bar on 16th and Brown Streets and a house on 1500 Swain Street about two weeks after the crime was reported in an effort to locate appellant. (Notes of testimony, Vol. 1, pgs. 3–14).

Detective Joseph Hall testified that he initially alerted the sector patrolmen to watch for appellant and that he then went to 1500 Swain Street (appellant's grandfather's address), and then to a house on 700 North 16th Street. He also left a folder in the Central Detective Division files so that if appellant was arrested by some other officer they would know he was wanted on another charge. Detective Hall stated that he was constantly on the lookout for appellant every time he was out on the street. He also stated that he did as much as he could toward the apprehension of Sanders but he also had many other cases. (N.T. Vol. 1, pgs. 18–37).

Officer Lemay, a uniformed policeman, testified that he knew appellant from working the area and he specifically

looked for him at the "Galaxy Bar", "The 1601 Ridge Avenue" bar, and a bar on Ridge and Francis, searching these "hangouts", four-five times each. Lemay also testified that he made a conscious effort on every tour he worked to locate appellant. (N.T. Vol. 1, pgs. 42–46).

Detective Clark testified that he notified the uniformed men working the area and contacted appellant's relatives at 1500 Swain Street and 15th and Brown. He also checked a pool hall on Ridge Avenue and a house on 17th Street that appellant was known to frequent.

■ We are convinced following a review of the testimony that the police made sufficient effort to locate appellant. He complains that seven months passed until he was arrested for this crime and after the first several weeks, the police made no effort to locate him and did not check the city employment records, the welfare records or the Social Security records. We agree that it appears that the police made an initial effort and then relaxed their efforts. However, this is a normal procedure in police work. If a suspect is not found while the trail is still "fresh" (within two to three weeks) the chances of apprehending him are significantly reduced with each passing week. In addition, the police must constantly investigate new cases, during the period the clues in those cases remain "fresh". We also cannot criticize the police for not searching the records of the Welfare Office, the Social Security Office or the City Personnel Office. We are not qualified to instruct the police in investigative techniques. We are satisfied that the Philadelphia police made a "reasonable" effort to locate appellant and, therefore, we do not agree that the effort was "lack luster".

■ While we think the delay between the criminal incident and the arrest was significant, we do not think it denied appellant due process of law. The delay was justified. Assuming that one could conclude that the delay was unjustifiable, we feel the lower court was correct in denying appellant's motion.

In evaluating due process claims of this nature, the courts have focused upon the strength and corroboration of the incriminating identification. *Commonwealth v. McCloud*, 218 Pa.Super. 230, 275 A.2d 841 (1971). In cases denying due process claims, corroboration has been stressed. *Wilson v. United States*, 409 F.2d 184 (9th Cir. 1969); *United States v. Napue*, 401 F.2d 107 (7th Cir. 1968). Where the courts have found due process denials, they have stressed the risk of error because the guilt depended on the credibility of one witness which defendant could not challenge because of the delay. *United States v. Jones*, 322 F.Supp. 1110 (E.D.Pa. 1971); *Ross v. United States*, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965). Here the victim made positive I.D. of appellant immediately after the crime and this was subsequently corroborated by one of the suspects apprehended.

We think the reasonableness of the police action coupled with the corroborated identification testimony, sufficiently supports the lower courts determination. We, therefore, find no merit in appellant's first contention.

Appellant's second contention is that the lower court improperly permitted the Commonwealth to introduce testimony of police officers as to prior statements of the complainant made to them. Appellant contends that for a prior consistent statement to be properly admitted into evidence, it must be shown that the witness's present testimony was impeached or shown that it was a recent fabrication—neither of which was shown here.

The trial court did permit two police detectives to testify over objection concerning a statement made to them by complainant, identifying Donald Snelling and appellant. (N.T. Vol. 11, Pgs. 40–41, 44–46). The court, however, instructed the jury that this testimony was to be considered only to show prompt complaint and consistency and not for the truth of the matter therein asserted. (N.T. Vol. 11, Pgs. 37, 46). At the end of that trial day, the judge apparently reconsidering the victim's testimony, concluded that there was an insufficient charge of recent fabrication and instructed the jury the next day not to consider the detective's

testimony as bolstering the credibility of the victim. (N.T. Vol. 111, Pgs. 3–4).

Appellant contends that these instructions came too late to cure the defect and it was therefore reversible error to admit the testimony without proof of recent falsification. We, however, believe the testimony was properly admitted. In a trial for rape, the fact that the woman upon whom the alleged rape was committed made complaints to persons to whom she would naturally complain, is competent evidence. See Henry, Pennsylvania Evidence § 473, *Commonwealth v. Nowalk*, 160 Pa.Super. 88, 50 A.2d 115 (1947). This would solve the problem presented here, except that the detectives testified not only that the victim made prompt complaint, but they also testified as to whom she identified as the perpetrators. Normally, in this situation, the victim's identification might be admitted under the "excited utterance" exception to the hearsay rule. See *Commonwealth v. Foster*, 240 Pa.Super. 376, 360 A.2d 723; *Commonwealth v. Edwards*, 431 Pa. 44, 244 A.2d 683 (1968). Our situation, however, does not fall within the "excited utterance" exception which requires "an occurrence or event sufficiently startling to render the normal reflective thought processes of an observer inoperative" and "the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought." McCormick, Evidence § 297.

Here, the victim identified her assailants in a police mug shot book—presumably upon careful reflection and thought, and therefore could not qualify for the exception. However, we believe it was not error to permit this testimony. The declarant was present in Court and could have been examined by defense counsel and the jury could have observed her demeanor as she answered his questions. As Judge Spaeth observed in *Commonwealth v. Dugan*, (Concurring Opinion), 252 Pa.Super. 377, 381 A.2d 967 at 971 (artist's sketch of rapist was allowed in evidence where victim was present to testify):

None of this is to suggest that drawing was not properly admitted. The rule against hearsay evidence should not be narrowly defined, and rigidly enforced. It has repeatedly been changed, in response to experience with its application and analysis by scholars, and it should always be interpreted in light of the dangers it is intended to guard against. Here, if the victim were unavailable, I should have considerable difficulty in deciding whether the artist alone should be allowed to testify to his drawing. With the victim available, however, and present to testify about what she told the artist, and how accurately the drawing depicted her attacker, it seems to me that the drawing was properly admitted. *The principle reason for excluding hearsay is the danger that the declarant's credibility cannot be assessed. That danger was not present here, for defense counsel had the opportunity to cross-examine the declarant,* and the trier of fact the opportunity to observe her reaction to the examination. Given these circumstances, I believe the drawing was properly admitted. (emphasis added).

We therefore, find no merit in appellant's second contention.

Judgment of Sentence Affirmed.

JACOBS, President Judge, concurs in the result.

SPAETH, J., files a concurring opinion.

HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring:

I concur in the result reached by the majority but believe that in evaluating the delayed arrest we should apply a somewhat different test than does the majority, namely:
"where there was an investigative justification for the delay and a strongly corroborated identification of the accused, a substantial showing of prejudice is required before a claimed denial of due process will be sustained."

*Commonwealth v. De Rose*, 225 Pa.Super. 8, 11, 307 A.2d 425, 427 (1973).

Applying this test, I conclude: First, there was sufficient "investigative justification" for the delay. In this regard, it seems to me that the knowledge the police had of appellant's habits was more likely to be valuable than the knowledge they might have gained from the records that appellant says they should have searched. Second, there was "a strongly corroborated identification of the accused." The victim's statements to the police are relevant to this issue. Finally, appellant failed to make "a substantial showing of prejudice." Simply saying that he was unable to recall his actions on the day of the crime was not enough. Frequently one is unable to recall what one did on a particular day, but then, upon consulting others, one's recollection may be refreshed. Appellant made no showing that he had made any such attempt.