## Commonwealth v. Molino

*Kenneth Osokow, assistant district attorney,* for the Commonwealth.

*Anthony Miele,* for defendant.

RAUP, *P.J.,* April 28, 1990—This matter is before the court on a motion to suppress evidence filed by defendant. Defendant seeks an order suppressing evidence obtained as a result of a blood sample drawn from defendant following his arrest on a driving under the influence charge.

Defendant was arrested by an officer of the Montoursville Police Department on the early morning of January 25, 1990. He was allegedly unruly and resisted arrest. Following the arrest he was taken to the DUI Processing Center operated at the Divine Providence Hospital under the general supervision of the county district attorney's office and chief county detective.

The only evidence presented at the suppression hearing was a video tape of the events which transpired at the DUI Processing Center. The actors on the video tape were defendant, two off-duty police officers from the Williamsport Bureau of Police who were manning the DUI Processing Center at the time and a nurse from the hospital who had been called for the purpose of drawing blood. Defendant was seated and was passive in his demeanor. Officer Faust advised defendant of the provisions of the Implied Consent Law, i.e., that he was being requested to submit to a blood test to determine the presence of alcohol in his blood; that if he refused, his motor vehicle operator's license would be suspended for a period of one year; that any refusal would be admitted into evidence against him in a trial; and that he would be charged with driving under the influence whether he submitted to the test

or not. Defendant initially did not respond to the request but after it had been repeated he eventually indicated that he would not submit to the test. The officer asked him to sign a form indicating that he was not consenting to the test and defendant signed that form.

At one point, defendant stood up, not in an aggressive way, and was told summarily to "sit down" by the officer.

After defendant had signed the form indicating that he was not going to consent to the test, Officer Faust and the other officer, Officer Lawrence Kuhns, then advised him that he should put his arm out. Defendant asked why and the officers said that they were going to take the blood from him. Defendant protested, the officers insisted that they had a right to take the blood; the defendant at no time was aggressive, but he was insistent that he did not want the blood drawn from him. He expressed concern about the needles. The officers insisted that they were going to take the blood from him whether he wanted it drawn or not. Officer Kuhns stated "we can do this the easy way or we can do it the hard way." With one officer holding his arm down, the nurse placed a needle in his arm. Defendant jerked away; the needle had to be changed. The second time the attempt was made, defendant's shoulder and arm were held and the blood sample was involuntarily obtained from defendant.

The defense attorney argues that the manner in which the blood was drawn is violative of defendant's due process rights under the United States and Pennsylvania Constitutions. We need not reach that issue, however.

The Implied Consent Law for the Commonwealth of Pennsylvania provides in pertinent part as follows:

"75 P.S. §1547. *Chemical testing to determine amount of alcohol or controlled substance*

"(a) *General rule*—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if the police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of the motor vehicle:

"(1) While under the influence of alcohol. . . .

"(b) Suspension for refusal—

"(1) If any person is placed under arrest for a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, *the testing shall not be conducted* but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months." (emphasis added)

The Pennsylvania Superior Court has affirmed the plain meaning of the above-quoted language, i.e., that where a driving under the influence charge is alleged, an individual has a statutory right to refuse to submit to a blood/breath/urine alcohol test. *Commonwealth v. DeFaveri,* 352 Pa. Super. 96, 507 A.2d 398 (1986). Where the refusal occurs, the defendant automatically loses his license for one year, and the refusal is admissible at trial as evidence of a guilty mind on the part of the defendant, i.e., evidence that the defendant believes he is under the influence.

The present case is distinguishable from the case advanced by the Commonwealth, *Commonwealth v. Hipp,* 380 Pa. Super. 345, 551 A.2d 1086 (1988). In that case, a defendant who was injured in a motor

vehicle accident had refused to submit to a blood test and the officers had not pursued the matter themselves. However, when blood tests were taken by the medical people for medical purposes, the police obtained samples of those blood tests for prosecutorial purposes and the Pennsylvania Superior Court held that this did not violate the provisions of section 1547(b)(1).

The Pennsylvania Superior Court has suggested that the provisions of section 1547(b)(1) would not be applicable where a defendant is facing charges in addition to DUI arising from his driving, e.g., where the defendant has been involved in a serious motor vehicle accident which has involved serious injury or death. *Commonwealth v. DeFaveri, supra.* There is nothing in the present case to suggest any accident involving serious injury or death. While there is a resisting arrest charge, the blood alcohol test would be irrelevant with respect to that charge.*

It is clear then that the actions of the officers in physically forcing defendant to submit to the blood test was violative of the language of section 1547(b)(1). The question then becomes whether the fruits of the actions of the officers can be admitted at trial or whether on the other hand should be held inadmissible by the court.

The Commonwealth argues that notwithstanding the fact that the officers violated the prohibition, the evidence should be admitted and the defendant be limited to civil remedies, such as a civil rights or civil assault action. The thrust of the Common-

---

* The Commonwealth has filed a post-hearing motion asking for leave to reopen the record to present evidence pertaining to the resisting arrest charge. As there is no assertion that the resisting arrest charge was one as to which the blood-alcohol test was being sought, we consider that the *DeFaveri* case is inapplicable and the motion to reopen the record will be denied.

wealth's argument is that we are presented with an infringement of statutory, not constitutional, rights.

In *Commonwealth v. Hipp,* the Pennsylvania court reiterated the Pennsylvania Superior Court's acceptance of the U.S. Supreme Court's decision in *Schmerber v. California,* that the U.S. Constitution does not require exclusion of a blood alcohol test taken in a medically reasonable way after a suspect's refusal "where the police have probable cause to believe the suspect was driving while intoxicated, in order to get evidence of the blood alcohol level, evidence that is particularly evanescent." *Hipp* at 357-8, 551 A.2d at 1092, *quoting Commonwealth v. Funk,* 254 Pa. Super. 233, 241, 385 A.2d 995, 999 (1978). Based upon this lack of constitutional infringement, the Commonwealth asserts that a suppression motion is not appropriate and that the results of the blood test must be admitted. We reject this argument.

First, rather than viewing defendant's motion as a suppression, we view his motion as a motion in limine to ascertain the admissibility of the test results. Second, we view the Commonwealth's argument as a challenge to the authority of the legislature to enhance the extent of an individual's civil rights beyond the minimum guaranteed by the Constitution.

Section 1547(b)(1) clearly reads that blood alcohol "testing shall not be conducted" if a person placed under arrest for a violation of section 3731 is requested to submit to testing and "refuses to do so." It is inconceivable to us that the legislature would have contemplated that police officers would ignore the statutory prohibition, compel the blood tests, and be able to admit the results into evidence. It is implicit that the legislature intended an exclusionary effect under these circumstances.

To apply the statute as the Commonwealth would have us would be to sabotage the execution of section 1547(b)(1). This is a result contrary to the legislature's instructions under the Statutory Construction Act. See 1 Pa.C.S. §§1921, 1922. Furthermore, to narrowly interpret the meaning of section 1547(b)(1) so as to allow the admission of evidence illegally obtained would also violate the Statutory Construction Act. 1 Pa.C.S. §1928. See *Commonwealth v. Cluck*, 252 Pa. Super. 228, 381 A.2d 472 (1977) (penal statutes must be strictly construed in favor of the accused); *Commonwealth v. Cunningham*, 248 Pa. Super. 219, 375 A.2d 66 (1977) (any ambiguity concerning the ambit of a penal statute shall be resolved in favor of life and liberty).

The officers having contravened the express language of the statute in involuntarily causing the blood to be taken from defendant, the only reasonable option available to the court is to hold that this evidence will not be admissible at trial.

ORDER

And now, April 23, 1990, the court treats defendant's motion to suppress as a motion in limine, and we hold that the blood alcohol test results in this case shall not be admissible at trial.