**Leonard R. BROWN, Petitioner**

v.

**BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS,[1] Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 18, 2011.
Decided March 17, 2011.

---

**1.** The correct name for the Respondent is "Department of State, Bureau of Commissions, Elections and Legislation."

Leonard R. Brown, pro se, for petitioner.

Martha H. Brown, Assistant Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Leonard R. Brown (Petitioner) appeals *pro se* from the determination of the Pennsylvania Department of State, Bureau of Commissions, Elections and Legislation (Department) suspending his notary license for six months followed by a six-month period of probation, requiring him to attend six hours of notary education, ordering him to pay a civil penalty of $500, and requiring him to submit monthly copies of his register to the Department for failing to properly verify the signatures of two people engaged in a scheme to fraudulently convey property. For the following reasons, we reverse.

On July 16, 2007, a man Petitioner knew vaguely from the neighborhood as "Angel" came to Petitioner with a couple, who appeared to be in their early seventies and who Petitioner did not know, to notarize their signatures on a deed for property they were conveying to C. Hernandez, who apparently was "Angel." Petitioner asked the couple if they had photo identification, but they responded that neither of them had a driver's license because they were too old. Instead, they each produced a Medicare card, one bearing the name and signature of Kenneth Walker and the other bearing the name and signature of Josephine Walker. Medicare cards, besides bearing the beneficiary's name and signature, also contain the beneficiary's gender, the type of plan entitlement, an effective date and a claim number, but no expiration date. Relying on the Medicare cards and the fact that "Angel" vouched for them, Petitioner notarized the Walkers' signatures. It turned out that Kenneth Walker died in 1993, and Josephine Walker died in 1990, and the couple purporting to be them somehow obtained their Medicare cards and then forged their signatures on the deed. "Angel" or "C. Hernandez" turned out to be Carlos Quiles, who was involved

**1258**

in a scheme to fraudulently transfer dozens of properties.

While he had no knowledge of the scheme, the Department issued an order to Petitioner to show cause why his notary's license should not be revoked. Following a hearing before the Department that elicited the above information, the Department found that Petitioner violated Section 158.1(a) of the Notary Public Law (Law)[2] by not identifying the "Walkers" in accordance with this provision that provides:

> The officer notarizing the instrument shall know through personal knowledge or have satisfactory evidence that the person appearing before the notary is the person described in and who is executing the instrument.... "[P]ersonal knowledge" means having an acquaintance, derived from association with the individual in relation to other people and based upon a chain of circumstances surrounding the individual, which establish the individual's identity, and "satisfactory evidence" means the reliance on the presentation of a ***current, government-issued identification card bearing a*** photograph, *signature* or physical description and serial or identification number, or the oath or *affirmation of a credible witness* who is personally known to the notary and who personally knows the individual. (Emphasis added).

■ Because Medicare cards do not contain an expiration date, the Department found that they could not be "current" identification within the meaning of the Law. It suspended Petitioner's notary license for six months, followed by six months of probation, fined him $500, required him to attend six hours of notary education classes, and ordered him to submit monthly copies of his notary register. Petitioner then filed this appeal[3] contending that he complied with the Law because he did all that was necessary to validate the "Walkers'" identification by examining the Medicare cards and validating their signatures with the signature on the cards.

■ Section 158.1(a) contains three ways for a notary to validate a person's identification. First, he may know them personally. Second, he may rely on a current, government-issued identification card bearing a photograph, signature or physical description and a serial or identification number. Finally, he may rely on the oath or affirmation of a credible witness known to both the notary and the individual whose identity needs verification. Here, Petitioner did not know the "Walkers" so the first means of identification could not have been met. As for the third means, he barely knew "Angel," as he was unaware of his real name or even of his alias of "C. Hernandez." In addition, "Angel," as the grantee on the deed, had a financial stake in the transaction and could not have been a credible witness even if Petitioner had known him better. Therefore, the only way for him to verify the "Walkers'" signatures was through the second method. The Medicare cards clearly were government-issued and bore a signature and identification number, but the Department contends that because they had an effective date but no expiration date, they could not have been "current." On the other hand, Petitioner con-

---

**2.** Act of August 21, 1953, P.L. 1323, *added by* the Act of December 9, 2002, P.L. 1269, 57 P.S. § 158.1(a).

**3.** Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Gombach v. Department of State, Bureau of Commissions, Elections and Legislation,* 692 A.2d 1127 (Pa. Cmwlth.1997).

tends that as long as there is no expiration date, they are "current."

 Ambiguities should and will be construed against the government. This principle has its foundation in the rule of lenity that provides that any ambiguity in a criminal statute will be construed in favor of the defendant. The rule of lenity requires a "clear and unequivocal warning in language that people generally would understand, as to what actions would expose them to liability for penalties and what the penalties would be." *Commonwealth v. Reaser*, 851 A.2d 144, 149 (Pa.Super.2004) (quoting *Commonwealth v. Cluck*, 252 Pa.Super. 228, 381 A.2d 472, 477 (1977)). Consistent with the rule of lenity, the Statutory Construction Act of 1972, 1 Pa.C.S. § 1928, requires that every penal provision, whether in a civil or criminal statute, be construed strictly.

The Law does not contain a definition of "current" so we must construe it according to its common and approved usage. 1 Pa.C.S. § 1903. According to Webster's Ninth New Collegiate Dictionary (1989), p. 316, "current" means "presently elapsing; occurring in or existing at the present time; most recent." Applied to a government-issued identification card, this could mean that a card that does not have an expiration date is not "current" because there is no way to make that determination. On the other hand, it could just mean that a card has to have an effective date to be current. Because ambiguities in a statute have to be read against the government absent an interpretive regulation, we must reverse the Department's determination.

### ORDER

AND NOW, this 17th day of March, 2011, the order of the Department of State, Bureau of Commissions, Elections and Legislation, dated August 16, 2010, is reversed.