Commonwealth *v.* Wojdakowski et al., Appellants.

Argued April 28, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Ernest D. Preate,* with him *Harry Lapensohn,* for appellants.

*Carlon M. O'Malley,* Assistant District Attorney, with him *James F. Brady,* District Attorney, for appellee.

OPINION BY HIRT, J., July 17, 1947:

The defendants were jointly charged with receiving stolen goods in six separate indictments, each containing a single count. They were convicted on all of them. Sentence was suspended in one case, but the defendants were sentenced, alike, to four years imprisonment in the jail of Lackawanna County, on each of the remaining five convictions—two of the terms to be served consecutively and the other three, concurrently. We are asked in these two appeals, without objection from the Commonwealth, to review ten final judgments of sentence. Venue in all of the indictments was laid in Lackawanna County. Defendants' basic contentions are that it does not follow as a reasonable inference from the testimony that they received the property in that county; and that in any view the sentences must be set aside for want of evidence sufficient to convict them of having received the property enumerated in the indictments, with knowledge that it had been stolen.

A 1941 Buick "two-tone green" sedan, license number 9HM60, (actually owned by defendant Edward Wojda-kowski, but registered by him under a fictitious name) supplied important incriminating evidence in these cases against both defendants. About 3:15 A.M. on September 5, 1945, the Chief of Police of the Borough of Norwood, in Delaware County, observed two men near the entrance to an Acme Store in the borough, and the above Buick automobile standing nearby. The officer's suspicions were aroused and when he stopped his car to investigate, the men ran away and were not identified. They had dropped burglar tools on the ground and left others in a canvas bag in the automobile. In the Buick sedan were also found two guns; a certificate of title of a Lincoln Zephyr automobile in the name of Tulsa Petroleum Company and of another automobile owned by Harold D. Kasper; a key ring with 13 cash register keys; 2 keys for Tulsa Petroleum Company's safety-deposit box No. 561, in the Third National Bank of Scranton; two capital stock books of the Hawk Oil Company containing certificates issued to seventeen shareholders; a stock certificate for 50 shares of common stock of Graham Paige Motor Corporation and a stock certificate for 50 shares of common stock of Laclede Gas Light Company, both issued in the name of Walter W. Keller. A Pennsylvania automobile license plate for 1945, number 3100E, was also found in the car. It was developed on investigation that this license plate had been issued to defendant Walter Radziewicz for a Plymouth automobile then owned by him. With the exception of this license plate and the two guns, all of the above items of property, taken from the Buick automobile, were identified as property stolen from one or another of three buildings in Scranton, feloniously entered by the thieves, between July 19 and August 26, 1945.[1]

---

[1] During the night of August 26, 1945, the office building of Hawk Oil Company in Scranton was broken into. A part of the property stolen is the subject of three indictments.

After the police removed the above articles from the Buick car, it was towed to a garage in an adjoining town in the early morning of September 5, 1945, and there impounded by the police. It did not remain there long; the automobile was stolen from the garage by someone during the following night.

The defendants were located and were taken into custody on September 13, 1945. On the person of the defendant Radziewicz, the arresting officer found a card evidencing the registration of an automobile in his name and the issue of license number 3100E, to him, corresponding with the number on the license plate found in the abandoned Buick automobile by the Norwood police officer on September 5, 1945. From the person of Wojdakowski, the officer took two keys and an automobile registration card, in the name of John June as

Indictment No. 1 charges the defendants with having received two stock certificate books of Hawk Oil Company Incorporated, as well as two checks in the sum of $53.40 each, and sixteen keys, the property of that company.

The charge of Indictment No. 2 relates to a certificate for 50 shares of common stock of the Laclede Gas Light Company, and a certificate for 50 shares of common stock of Graham Paige Motors Corporation, the property of Walter W. Keller, chief clerk of Hawk Oil Company.

Indictment No. 3 charged the defendants with having received four United States Savings Bonds of the maturity value of $100 each; a certificate for 10 shares of stock of West Side Bank of West Pittston, and a certificate of title to a motor vehicle, the property of Harold D. Kasper, president of Hawk Oil Company.

On the night of July 19, 1945, the home of Robert Bittenbender in Scranton was entered and a .22 caliber pistol and a .32 caliber revolver were stolen. These items of property are laid in indictment No. 4.

A gasoline station in Scranton owned by Tulsa Petroleum Company was broken into during the night of August 4, 1945. Of the property stolen, indictment No. 5 charges defendants with having received a certificate of title to an automobile and two keys, the property of that company. Indictment No. 6 charges that defendants received one United States Savings Bond, of $500 maturity value, the property of George D. and Christine Carey.

owner of the Buick sedan, license number 9HM60. One of the keys was found to unlock a garage eight blocks distant from Wojdakowski's apartment in Philadelphia. In the garage was found the Buick sedan and in the automobile a .22 caliber target pistol and a .32 caliber revolver.

A United States Savings Bond, Series E, maturity value $500, issued in the names of George D. Carey and wife and four Series E United States Bonds, of $100 maturity value, issued in the name of Harold D. Kasper had been stolen in Scranton. On October 2, 1945, a State Police officer found these bonds in the possession of one Howard Kressly in Reading. Two checks for $53.40 each made by C. E. Thomas, payable to Abe Ace and endorsed by him in blank, were found by the same police officer in the possession of one Charles W. Fisher in Reading. The checks were drawn on the North Scranton Bank. Kressly testified that late in August 1945 both defendants came to his home near Reading in the Buick sedan and that defendant Edward Wojdakowski produced stock books of the Hawk Oil Company containing certificates which had been issued to shareholders. He asked Kressly to sell some of the stock but no agreement was consummated and Wojdakowski retained possession of the stock books. Both defendants returned to Kressly's house about ten days later, again in the Buick sedan. Defendant Walter Radziewicz then importuned Kressly to get him "a priority" for the purchase of a new automobile from a dealer near Reading. As "security for the priority" (*sic* according to Kressly) the five government bonds and the two checks referred to above, were deposited with him. A few days later Walter Radziewicz drove a black sedan to Kressly's house and accounted for the absence of the other defendant and the Buick car by stating that Wojdakowski had been in "a traffic jam", implying that they had been deprived of the use of the Buick sedan because of "a traffic violation."

Thus, almost all of the items of property laid in the six indictments, shown to have been stolen in Scranton, were traced to the actual possession of one or the other of the defendants, or were found in the Buick sedan, from which the property had been removed by the police. The various items were produced at the trial and were identified and admitted in evidence.

The details of the purchase of the Buick automobile by defendant Wojdakowski discloses circumstances of some significance in these cases. The purchase of the car was negotiated with John Jun, the owner (a relative of defendant Wojdakowski by marriage) in Lackawanna County by both defendants. Shortly thereafter, on August 10, 1945, Wojdakowski paid John Jun $1,450, the agreed purchase price, but took title in the fictitious name of John June. He signed that name to his application for a certificate of title, giving Clark's Summit, R. D. 2, fictitiously, as the residence of John June in Lackawanna County. According to the testimony of two girls whom the defendants visited, they were frequently in Scranton and they were there on both of the Saturday nights of the Hawk Oil Company and the Tulsa Petroleum Company burglaries. All of the property, involved here, originated in Scranton on dates when both of the defendants were there. On the first occasion they came in a Plymouth car owned by Walter Radziewicz (license number 3100E) and on the later date in the Buick sedan. It is a fair inference that the property stolen on August 4, 1945, was transported out of Scranton in Radziewicz's car and was transferred to the Buick sedan thereafter. The jury were also justified in inferring from the fictitious registration of the Buick automobile by one of the defendants, with knowledge of the other, that transportation of stolen property was one of the contemplated uses. And the evidence shows its continued use for that purpose by both defendants after the Plymouth car was no longer available. The close association

of the defendants under a variety of incriminating circumstances stamps them as partners in crime. They used the Buick sedan jointly for the transportation of the stolen property enumerated in the indictments. There is direct evidence of their actual possession of some of it and the circumstances charge both of them with possession of all other property, which the police officers found in the car. Any doubt as to their guilty knowledge, no matter how they received it, must have been dispelled by the character of the property in their possession. For example: the United States Savings bonds were issued in the names of stated owners; they were all Series E and, as such were non-negotiable. There was an obvious infirmity in the title to almost every item of property here involved, except in the original owners, sufficient to put the defendants on notice that it was stolen property.

The evidence as to all property enumerated in indictments Nos. 1, 2, 3, 5 and 6 shows the defendants in possession of recently stolen property (sentence was suspended on indictment No. 4 involving the fruits of a burglary on a more remote date). Defendants did not take the stand at the trial and no evidence was produced on their behalf. If these defendants had been charged with statutory burglary and larceny, the testimony in the present cases would have been sufficient to support verdicts of their guilt. *Commonwealth v. Lindie,* 147 Pa. Superior Ct. 335, 24 A. 2d 39; *Commonwealth v. Dock,* 146 Pa. Superior Ct. 16, 21, 21 A. 2d 429. And the inference of guilt arising from their unexplained possession would also have established venue. So also, under the circumstances, the unexplained possession of recently stolen goods, in the five cases before us, is evidence not only of the guilt of the defendants but of venue as laid in the indictments. *Commonwealth v. Joyce,* 159 Pa. Superior Ct. 45, 46 A. 2d 529.

Although the evidence on the general issue of the guilt of the defendants was largely, if not wholly, cir-

cumstantial, it was entirely sufficient to establish their guilt. As to the degree of proof required of circumstantial evidence to support convictions, the trial judge instructed the jury that "the facts and circumstances must be such as to exclude to a moral certainty every hypothesis but that of guilt of the offense which is charged. In other words, the facts and circumstances must not only be consistent with and point to the guilt of the accused but they must be inconsistent with his innocence." The charge in this respect was more favorable to the defendants than they were entitled to, under the rationalized restatement of the rule in *Commonwealth v. Marino et al.,* 142 Pa. Superior Ct. 327, 16 A. 2d 314, approved in *Commonwealth v. Libonati,* 346 Pa. 504, 31 A. 2d 95; *Commonwealth v. Holt,* 350 Pa. 375, 39 A. 2d 372; and *Commonwealth v. Bausewine,* 354 Pa. 35, 41, 46 A. 2d 491.

The circumstances were sufficient also to support venue as laid in the indictments, disposing of the jurisdictional question raised at the trial of these cases. The locus of a crime is always in issue, for a court has no jurisdiction of the offense unless committed in the county where tried. *Commonwealth v. Mull et al.,* 316 Pa. 424, 175 A. 418. Usually the question is not specifically raised but, in such case, the conviction of a defendant is conclusive that the crime was committed where laid in the indictment, for a verdict of guilt includes such finding. *Commonwealth v. Bubnis,* 197 Pa. 542, 547, 47 A. 748; *Commonwealth v. Kaiser,* 184 Pa. 493, 497, 39 A. 299. When defendants questioned the jurisdiction of the court, venue became a distinct issue of fact for the jury. The issue was submitted on adequate instructions. The trial judge in effect charged the jury that the burden was on the Commonwealth of proving venue as laid in the indictments, beyond all reasonable doubt. The charge, in this respect, could not have been more favorable to the defendants. Cf. 2 Wharton Crim. Ev. sections 929, 1053.

Edward Wojdakowski, in seeking a new trial, assigned as error the court's refusal to withdraw a juror because of testimony of a Commonwealth witness implying his guilt of a prior crime. The witness, John Jun, from whom Wojdakowski bought the Buick sedan, in the course of his examination by the district attorney, testified: "Q. Did you say anything to Eddie about why he took the name of John June? A. Yes, I ask; and he say he's on parole and he no want to go by that name. Q. He said he was on parole and he didn't want to go by that name? A. Yes." There is no merit in Wojdakowski's contention that the ruling of the court was error. Proof of his identity as the owner of the Buick used in transporting stolen goods, was vital to the Commonwealth's case. Accordingly, the circumstances under which this defendant assumed an alias were proper subject of inquiry. Henry, Pa. Trial Ev. 3rd Ed. section 20. The statement, objected to, was the spontaneous utterance of the witness, in the natural development of the facts and was not evoked by the Commonwealth designedly to prejudice this defendant by reference to his guilt of another crime. He therefore is in no position to complain (*Com. v. Kaminski,* 104 Pa. Superior Ct. 115, 158 A. 639) and the repetition of the statement by the district attorney in the examination of the witness, quoted above, did not call for a withdrawal of a juror under the circumstances. *Commonwealth v. Fiorentino,* 266 Pa. 261, 109 A. 679.

The remaining assignment of error is largely academic and does not merit discussion. Even if valid, each of the defendants would still have to serve a total of eight years imprisonment.

The judgments of sentence are affirmed.