396 A.2d 406

**COMMONWEALTH of Pennsylvania**

**v.**

**Norberto GARCIA, Appellant.**

Superior Court of Pennsylvania.

Argued June 15, 1977.

Decided Dec. 22, 1978.

298

---

Margaret H. Poswistilo, Easton, for appellant.

Michael E. Riskin, Assistant District Attorney, Bethlehem, submitted a brief for Com. appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der V OORT, Judge:

Appeal is taken from judgment of sentence rendered following jury trial and verdict of guilty to charges of armed robbery and criminal conspiracy. "Crimes Code", Act of 1972, Dec. 6, No. 334, 18 Pa.C.S. §§ 3701 and 903. Post trial motions were made and denied. Appellant's arguments on appeal are preserved for our consideration by their having been raised below.

Factually, on November 5, 1975, at approximately 5:30 P.M., an armed robbery occurred at a beer distributorship in Bethlehem, Pa. The proprietor testified that she and her son were working at their place of business serving one customer when another entered the office section of the garage-type structure from which the business operated. The second "customer" was identified as Robert Pagan, co-defendant of appellant below. After ordering a quantity of beer, Pagan produced a revolver and informed the proprietor that he wanted the money. Another man, identified as appellant, thereupon entered and emptied the cash register. Yet a third man also entered and ransacked the drawers in the office when told there was no more money. A fourth man, brandishing a shot gun, appeared at the office door with the son of the proprietor, whereupon the owner, her son, and the customer were secured to each other, back to back, with handcuffs, and were silenced with tape placed over their mouths. The intruders then left in the car in which they had come, apparently with a fifth man whom the proprietor had noticed in said vehicle when she had approached them upon their arrival in the parking lot to request them to park in a certain manner. Thus the owner of the business had two opportunities—in the parking lot and in the well-lit office—to observe these men, of whom appellant and Pagan were charged and tried before a jury below, Judge Carleton Woodring, presiding.

Appellant and his co-defendant below were apprehended based upon "John Doe" warrants promulgated on the basis of information supplied to an officer of the Bethlehem police department by an unidentified informant. By

way of a bill of particulars and motion for disclosure filed in the lower court, appellant sought the name of this informant. A hearing on this and other motions was held pre-trial, on February 4, 1976. Disclosure of the identity of the informant was not granted. It was the theory of the defense, in the lower court as well as on appeal, that the identity of this individual was necessary so that he could be called to testify in the hope that he had mistakenly identified Garcia and had incorrectly placed him as a conspirator in the crime. If such testimony were elicited, then the testimony of an alibi witness, who stated that appellant had been in New York City on the day of the robbery, would be corroborated. It is argued that it was error to let this identity go unrevealed.

Based upon the testimony, we do not share appellant's view as to the essential nature of the eyewitness' possible testimony. Our Supreme Court in *Commonwealth v. Garvin*, 448 Pa. 258, 293 A.2d 33 (1972), pointed out the importance of balancing the need to protect the secrecy of informer's identities for effective law enforcement and the obligation to allow to an accused a full and fair defense. Where, for instance, an informer is the sole eyewitness, then his identity must be made known. See *Commonwealth v. Washington*, 463 Pa. 206, 344 A.2d 496 (1975). We do not find compelling urgency for disclosure in the instant case. The informer was not an eyewitness. Two victims of the crime provided unimpeached identifications of the defendants below. The information supplied by the informer led the police to them, but further investigation and questioning led to statements of an incriminating nature.[1] *Commonwealth v. Culberson*, 467 Pa. 424, 358 A.2d 416 (1976). Scrutinizing the testimony, we cannot find that the informer's testimony would have materially aided appellant. The mere allegation by appellant to the contrary is not sufficient to shift the balance to his favor. *Commonwealth v. Bradshaw*,

---

1. These statements were not introduced at trial, where the question of validity of arrest based upon informer's information had already been considered.

238 Pa.Super. 22, 364 A.2d 702 (1975). We find no error in the lower court's maintaining the informer's secrecy.

 Appellant challenges the constitutionality, presumably, although not stated, under principles of due process, of *Pa.R.Crim.P.* Rule 310. It was under this rule that he moved for disclosure of the informer's identity and was denied. At the time of trial, the rule read as follows:

> All applications of a defendant for pretrial discovery and inspection shall be made not less than five days prior to the scheduled date of trial. The court may order the attorney for the Commonwealth to permit the defendant or his attorney, and such persons as are necessary to assist him, to inspect and copy or photograph any written confessions and written statements made by the defendant. No other discovery or inspection shall be ordered except upon proof by the defendant, after hearing, of exceptional circumstances and compelling reasons. The order shall specify the time, place and manner of making discovery or inspection and may prescribe such terms and conditions as are necessary and proper. In no event, however, shall the court order pretrial discovery or inspection of written statements of witnesses in the possession of the Commonwealth.

Appellant argues that there is no standard provided by the rule for the lower court's guidance in finding an exceptional circumstance. It is alleged there is no procedure established by which a defendant may challenge the refusal of his requested discovery. These arguments ignore the function of the lower court in hearing testimony and assessing the circumstances of each case, as well as the appellate function of finding error in the discretion exercised below. Rules provide guidance for conduct at the bar; interpretation of them is left for courts. It is meritless to argue that a rule per se does not provide for all contingencies which might occur. It is likewise pointless to read any rule without consideration of the cases which discuss it and delineate practice under it. We do not accept appellant's argument as

to the unconstitutionality of *Pa.R.Crim.P.* 310.[2] See *Commonwealth v. Taylor*, 259 Pa.Super. 484, 393 A.2d 929 (1978).

As stated, in addition to making a formal motion for disclosure of the witness' name and address, appellant had applied for a bill of particulars requesting this name and address. No answer was forthcoming within two days, as required by the then-applicable *Pa.R.Crim.P.* Rule 221.[3] This rule further states that relief shall be sought by defendant within ten days of his service of the bill if the Commonwealth fails to respond. The docket entries show that defense counsel moved for and was granted a rule to show cause why the defendant should not be discharged for the Commonwealth's failure to answer. Hearing on this as well as the motion for disclosure, discussed above, and other motions, was held pre-trial, all motions being consolidated. After a full hearing, relief was denied and the application for bill of particulars refused. We find no abuse of discretion below in not granting the request for the bill for the reason above-stated that the defense was not entitled to know the name of the informer. Appellant's argument to the contrary is without merit.

■ Further appellant argues that it was error below not to have discharged appellant for errors alleged to have existed in the arrest procedures. Appellant relates that at the preliminary hearing he requested discharge because the "John Doe" warrants were not produced or the obtaining of them explained. The request for discharge was reiterated and made a part of a motion to quash indictments at the suppression hearing, *supra.* To clarify the matter, the hearing judge reopened that which was the subject of the preliminary hearing and permitted examination of the arresting officers. Testimony was heard that an informer had given information that the robbery was going to take place. On the day of the occurrence, shortly thereafter, the inform-

**2.** Now amended by and renumbered to *Pa.R.Crim.P.* Rule 305. The Commonwealth, through the Court Administrator of Pennsylvania, has filed a protective brief on this issue.

**3.** Now *Pa.R.Crim.P.* Rule 304.

er stated that the robbery had been completed and gave identification and location information as to the perpetrators. The city police officers filed informations and obtained "John Doe" arrest warrants, names of the accuseds being then unknown. Those described by the informer were apprehended, their names ascertained, and they were interrogated and arraigned. During custody and prior to the preliminary hearing, the criminal complaints were amended or rewritten to include the proper names of appellant and the others. The preliminary hearing then resulted in a finding of a prima facie case against appellant. We find no error in the arrest procedures.

██ We find no merit to appellant's additional claim that it was error for the suppression hearing judge to disallow further examination of the arresting officers in regard to their arrest procedures, viz., their coming on to the informer's statements. Although it may be admirable for defense counsel to have bent every effort to obtain knowledge of the informer's identity, this extended examination was not relevant. The testimony given, excerpted by us above, by the officers could not have been more complete as to pertinent issues of the arrest. The discretion of the court in disallowing this further examination was not abused.

██ After due consideration, we find no merit to his remaining arguments wherein appellant claims abuse of discretion below. A request for a continuance was not improperly denied, appellant having argued that he needed time to produce three alibi witnesses. Only one of these was known by name, and all were in Puerto Rico. Alibi testimony was given by appellant's sister. With the possibility of an unknown length of time necessary for the defense to ferret out its information regarding these witnesses, the trial court was correct to proceed on the strength of one alibi witness. Defense objection to in-court identification of appellant by the victim was correctly overruled, when the ground for the objection was that appellant was sitting next to his counsel in the courtroom. Appellant is disregarding the oath taken by the identifying witness to speak truthful-

ly, and is incorrect in arguing that an accused's appearance in court in the company of his counsel is unduly suggestive. It was not error to have denied a severance of appellant's trial from that of his co-defendant. Their actions were in concert, for one criminal purpose, and the same witnesses were involved. Nor was the court's refusal to appoint an investigator to search for the unknown alibi witnesses error.

■ Further appellant argues that the identification testimony of the proprietor of the business was so insufficient as not to support the verdict. It is argued that she could not recall such distinct characteristics as ears, eyebrows, lips, chest, feet, and could not discern age. While the witness may have been unable to voice descriptions of these specific aspects of appearance, she was unequivocal as to the overall appearance of appellant—the sum of these parts. She saw him in a lit parking lot and in a well-lit office, over a period of many minutes during the robbery, and not distant from him. She never equivocated as to her identifying testimony, which we view as sufficient and well worthy of belief.

The last argument, that the lower court erred in reducing the sentence of a co-defendant after his as well as appellant's sentencing, is outside the record of this appeal and is not properly before us.

Affirmed.

SPAETH, J., files a Dissenting Opinion.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

Appellant should be granted a new trial because the lower court erred in refusing to order the Commonwealth to disclose the identity of the informer.[1]

1. Having reached this conclusion, I find it unnecessary to consider appellant's several other arguments.

The case arises from a robbery committed on November 5, 1975. The trial was before a jury. The Commonwealth proved its case by calling two of the victims, Frank Couch and Rose Bologes. Their testimony, and the testimony for the defense, may be summarized as follows.[2]

At about 5:30 p. m. Mr. Couch parked his car in the Banko Beverage Service store parking lot. He noticed another car parked in the lot with some men by it. Entering the store, he ordered a case of beer from Mrs. Bologes, the proprietor. Two other men were already in the store. They had ordered some beer, and Mrs. Bologes had told her retarded son Paul to get it. When Mr. Couch placed his order, Mrs. Bologes told Paul to get that too. She then went into her office. The two other customers followed her. One customer (later identified by Mrs. Bologes and Mr. Couch as Roberto Pagan) produced a gun and said, "This is it. Keep cool and you won't be hurt." The other customer (later identified by Mrs. Bologes as appellant) went behind the counter and took money from the cash register. A third man (never identified) entered and ransacked the drawers, and a fourth man (also never identified), carrying a shotgun, brought Paul into the office. Mrs. Bologes, Paul, and Mr. Couch were made to get down on the floor, their mouths were sealed with tape, and they were handcuffed together.

The robbery took ten to twelve minutes. Mrs. Bologes and Mr. Couch were both positive in their identifications. They both said that the office was well-lighted, that the robbers wore no masks, and that they had an ample opportunity to see the robber or robbers they respectively identified.

Pagan and appellant denied any participation in the robbery, and appellant offered evidence of his good reputation.

The jury found Pagan and appellant guilty of robbery and conspiracy. After motions in arrest of judgment and for a

2. The record does not include a transcript of the trial. This absence, however, does not preclude our deciding the case, for as will appear, the critical event occurred pre-trial. The statement of facts that follows is taken from the opinion of the lower court and the Commonwealth's brief.

new trial were filed and denied, sentence was imposed. This appeal followed.

Before the trial, counsel for appellant had filed various motions, among them a Motion for Disclosure of Informant's Name. It appeared at the hearing on the motion for disclosure that on November 4, 1975—the day before the robbery—an informer told Officer Regino Cora, a patrolman of the Bethlehem police force, that he had overheard five men planning a robbery in Bethlehem. It further appeared that on November 5 at about 11:00 p. m.—some five and a half hours after the robbery—the informer told the officer that he had overheard the same men discussing having committed the robbery at the Banko Beverage store; the informer told the officer details of the robbery, and gave him descriptions of the men. The officer passed this information on to the detective on duty. N.T. 2/4/76, 17–18, 63–64, 68–69.

In support of the motion for disclosure, counsel for appellant called Rosa Sanabria. She testified that she was appellant's sister, that she lived in New York City, and that on November 4, 1975, appellant went shopping with her there from about 10:30 a. m. to 1:30 p. m. and stayed overnight. N.T. 2/4/76, 5–6. She testified that she remembered the date "[b]ecause he [appellant] was trying to make me a surprise party for my birthday." *Id.* at 8. Counsel then made the following argument to the hearing judge:

Now, Your Honor, my defense is, first of all, Norberto Garcia was not even in Bethlehem or was not in the area of where the informer apparently was on November 4. As my witness indicated, Mr. Garcia was in New York on November 4. Therefore, the information that the informer gave to the police on November 4 has to be wrong with reference to my defendant. The only way I can test that is to interview the informer prior to trial and to subpoena that informer into trial and to prove to the satisfaction of everyone involved that he made a mistake in identity when he said my man was, apparently, one of these five that was planning the robbery.

In addition, if the informer, if the informer heard these same five men discussing the armed robbery after it occurred he should be able to describe these five men who actually were the robbers. My man says he did not do this crime; therefore, if I could bring the informer in to say what he knows of the five men whom he heard discussing the crime I could show that my man was not one of those. It would exculpate Norberto Garcia to bring the informer in and have him say who the five men were that discussed the occurrence of the robbery. Therefore, in order to exculpate Norberto Garcia I need to interview and subpoena and bring in the informer because his information, his information I have shown, excuse me, I have showed by bringing in my witness that Norberto Garcia was not in Bethlehem on November 4.

THE COURT: So you are going to have alibi evidence. The defense side of the case will involve the production of alibi evidence for the jury to—(Interposed.)

MRS. POSWISTILO: No, Your Honor. The crime was November 5, on November 4 the informer overheard certain people planning a robbery. My man is charged with conspiracy; therefore, my man is, apparently, charged as one of those five that were discussing it.

THE COURT: All right, it does not necessarily follow but go ahead.

MRS. POSWISTILO: In any case, if an informer heard five people discussing a robbery and then calls up the next day and says these same five people have now admitted they did the robbery, and my man is charged with the robbery; necessarily, my man has to have been one of the original five and one of the five that discussed it afterward.

THE COURT: So it attempts to put at issue any identification testimony that the Commonwealth would produce during the course of the trial from any source?

MRS. POSWISTILO: That's right. It's absolutely essential to a defense of my case and I have, Your Honor, several, I have one important recent case which I would like to call to your attention, if I may get it.

N.T. 2/4/76, 18–19–20.

After further argument, by defense counsel and the district attorney, the judge reserved his decision, but in the end he denied the motion for disclosure. I believe this was error.

–1–

On a motion for disclosure the defendant has the burden of producing evidence to show that disclosure would be "relevant and helpful to the defense . . ., or . . . essential to a fair determination of a cause." *Roviaro v. United States*, 353 U.S. 53, 60–61, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957); *Commonwealth v. Carter*, 427 Pa. 53, 59, 233 A.2d 284, 287 (1973); *Commonwealth v. Pritchett*, 225 Pa.Super. 401, 407, 312 A.2d 434, 438 (1973).

A mere allegation that the informant's testimony might be helpful will not suffice . . . [citations omitted]. However, the defendant cannot be expected to predict exactly what the informant would say on the stand. Rather, in keeping with *Roviaro* and *Carter*, "all the defendant must show is a reasonable possibility that the anonymous informer could give evidence that would exonerate him." *Price v. Superior Court*, 1 Cal.3d 836, 463 P.2d 721, 83 Cal.Rptr. 369 (1970).

*Commonwealth v. Pritchett, supra*, 225 Pa.Super. at 407–08, 312 A.2d at 438.

Here, appellant has met these requirements. As the lower court recognized, "the primary question in the case was one of identification." Lower Court Slip Opinion at 2. If accepted, the testimony of appellant's sister, while not showing that appellant could not have been one of the robbers on November 5, was relevant to show that he could not have been one of the conspirators on November 4. If the informer had testified at the trial that appellant was not one of the conspirators he overheard on November 4, planning the robbery, and later overheard on November 5, discussing the accomplishment of the robbery, the jury might have had a reasonable doubt regarding Mrs. Bologes's identification of appellant, despite the fact that the identification was posi-

tive (indeed, it is not unheard of for a witness initially positive to acknowledge some uncertainty after hearing another witness).

–2–

The Commonwealth argues, and the lower court based its decision on the proposition, that the informer would not have testified that appellant was not one of the men he overheard on November 4 and 5. Thus the Commonwealth says that the informer would have testified that appellant "was present when the Robbery was planned, and was present after the Robbery when the other participants were talking about the Robbery. . . .," Commonwealth's Brief at 6; and the lower court held that "[t]he proferred testimony would not exonerate but convict," Lower Court Slip Opinion at 5. These statements, however, cannot support the refusal to order disclosure.

Never having heard the informer say anything, the lower court could not know what the informer's testimony would have been; it therefore was in no position to say whether the testimony would or would not exonerate appellant. The Commonwealth knows what the police officer says the informer said, but that does not mean that the Commonwealth knows how the informer would testify. What the Commonwealth's argument comes down to is the assertion that on a motion for disclosure the hearing judge is bound to accept the Commonwealth's statement of what the informer's testimony would be. If one were to accept this argument the result would be that no informer's identity would ever be disclosed. It is settled, however, that it is not for the Commonwealth to say what the informer's testimony would be. Thus in *Roviaro v. United States, supra* 353 U.S. at 64, 77 S.Ct. at 629, the Supreme Court of the United States said:

The desirability of calling John Doe [the informer] as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide.

And in *Commonwealth v. Carter, supra* 427 Pa. at 64, 233 A.2d at 289–90, our Supreme Court said:

Finally, it is urged that disclosure should not be required because it will in no event aid the defendant. This is true, contends the Commonwealth, because informers themselves are invariably addicts or persons with provable criminal backgrounds, and thus their testimony can be completely discredited before the trier of fact. We do not believe, however, that our notions of jurisprudence permit the prosecution to be the arbiter of the value to the defense of the testimony of a prospective witness. Under an adversary system of justice, each side is deemed uniquely suited to determine whether the testimony of a particular witness will advance its cause.

–3–

The Commonwealth also argues that it should not have been ordered to disclose the informer's identity because the informer was not an eye-witness to the robbery.

In fact, the informer was an eye-witness to the conspiracy, which was one of the offenses with which appellant was charged, and of which he was convicted. This fact is in no way affected by the principle of law, cited by the Commonwealth, that a conspiracy need not be proved by eye-witness testimony but may be proved circumstantially. In addition, the informer was an eye-witness to the robbers' discussion of the robbery shortly after the robbery.

In any event, the law is not, as the Commonwealth suggests, that an informer's identity need be disclosed only if the informer was an eye-witness. To the contrary, as the Supreme Court stated in *Roviaro v. United States, supra* at 353 U.S. 62, 77 S.Ct. at 628–29:

We believe that *no fixed rule with respect to disclosure is justifiable.* The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

This balancing test was expressly adopted by our Supreme Court in *Commonwealth v. Carter, supra* 427 Pa. at 58–59, 233 A.2d at 286–287 and applied by this court in *Commonwealth v. Pritchett, supra* 225 Pa.Super. at 406–07, 312 A.2d at 437–438. In *Pritchett* the Commonwealth also argued, as it does here, that disclosure should be required only where the informer was an eye-witness. The lower court had found that the informer had been an eye-witness, but the Commonwealth urged that the record did not support the finding. We agreed with the Commonwealth that the record was ambiguous, *id.,* 225 Pa.Super. at 408, 312 A.2d at 438, but held that even on the assumption that the informer had not been an eye-witness, his participation had been such that the *Roviaro—Carter* balancing test required disclosure, *id.,* 225 Pa.Super. at 409, 312 A.2d at 439.

When the *Roviaro—Carter* balancing test is applied here, it is evident that disclosure should have been ordered, for as discussed above, the informer's participation was such that his testimony would have borne immediately upon the only substantial issue, which was the identification of the robbers.

The judgment of sentence should be vacated and a new trial granted.