451 A.2d 714

COMMONWEALTH of Pennsylvania

v.

Larry BRUNNER, Appellant.

COMMONWEALTH of Pennsylvania

v.

Woodrow Wilson MURPHY, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 5, 1982.

Filed Oct. 8, 1982.

412

414

Gary R. Egoville, Assistant Public Defender, Norristown, for appellants.

David M. McGlaughlin, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before SPAETH, CAVANAUGH and MONTEMURO, JJ.

SPAETH, Judge:

This case arises on two appeals, which have been consolidated. Appellant Brunner and appellant Murphy were tried together before a jury. Each was convicted of burglary, theft of movable property, theft by receiving stolen property, and conspiracy. On the burglary convictions, appellant Brunner was sentenced to five to ten years imprisonment, and appellant Murphy to seven and one-half to fifteen years imprisonment.[1] Appellants make several common arguments, which will be discussed first: (1) whether the lower court erred in denying a motion to dismiss filed by each appellant for unreasonable pre-arrest delay; (2) whether the lower court erred in denying the motion to suppress prior convictions of each appellant; and (3) whether the evidence was sufficient to sustain the convictions. In addition, each appellant raises other issues. Appellant Brunner argues that the lower court erred in denying his motion to sever. Appellant Murphy argues that the lower court erred (1) in denying his motion for a change of venue; (2) in denying his motion to suppress his alias "Christopher Souder;" (3) in admitting into evidence certain exhibits; and (4) in denying his motion for a mistrial when a Commonwealth witness testified that he had "jumped parole." We do not find any of these arguments meritorious, except appellant Murphy's argument that his motion for a mistrial should have been granted. We therefore affirm appellant Brunner's judgment of sentence, but vacate appellant Murphy's and grant him a new trial.

1. The related theft offenses merged for sentencing purposes and sentence on the conspiracy convictions was suspended.

The first of the common arguments concerns whether there was sufficient pre-arrest delay to justify granting appellants' motions to dismiss. Appellants argue that there was a delay of ten months between the time of the incident and their arrest. Appellant Brunner's Brief at 9; Appellant Murphy's Brief at 10.

The burglary of the Fries residence, which is the incident that gave rise to the charges here, took place on August 10, 1979. At the pre-trial hearing, Trooper Kline testified that he had first learned of Alice Maxwell, also known as Debbie Souder, on December 7, 1979, the day she was arrested for attempting to sell a stolen camera to a camera store. N.T. 12/2/80, 7. On December 12, a search warrant was issued for the residence in which Ms. Maxwell lived with appellant Murphy. *Id.* 15. On January 30, 1980, Ms. Maxwell told the trooper that she had been involved in burglaries with both appellant Brunner and appellant Murphy. *Id.* On March 10, Ms. Maxwell told the trooper that she had burglarized the Fries home. *Id.* 12. There were subsequent interviews with Ms. Maxwell, *id.* 12, and further investigation, *id.* 14. On June 11, complaints were issued for both appellants. Appellant Brunner was arrested on June 18, and appellant Murphy on June 20. *d.* 13–14. Trooper Kline explained that the delay in arresting appellants after the complaints had issued occurred because it was necessary to have appellants released from incarceration. *Id.* 14.

Appellants argue that the ten-month period between the Fries burglary, on August 10, 1979, and their arrests, on June 18 & 20, 1980, denied them due process. The Commonwealth argues that the relevant time period, and delay, was some four and one-half months, that is, from January 30, 1980, when Ms. Maxwell first mentioned appellants, to appellants' arrests in June. Brief for Appellee at 8 (Brunner); Brief for Appellee at 5 (Murphy). As to appellant Brunner, the lower court held that the "three month delay" was justified by the need for further investigation, and that Brunner had not been prejudiced by the delay since he was able to produce an alibi witness. Slip op. at 5 (Brunner).

As to appellant Murphy, the lower court held that the delay was justified. Slip op. at 3 (Murphy).

■ We agree with the lower court's conclusion, but not all of its reasoning. The relevant time period is the ten months between the date of the incident and appellants' arrests. *See Commonwealth v. DeMarco,* 281 Pa. Superior Ct. 62, 421 A.2d 1147 (1980); *Commonwealth v. Sanders,* 260 Pa. Superior Ct. 358, 394 A.2d 591 (1978). In deciding whether this ten-month delay denied appellants due process, we must balance the reasonableness of the delay against the prejudice to appellants. Here, the delay was long, but it was justified by the investigative efforts of the police, who did not learn that appellants were connected with the Fries burglary until March 10, 1980. *See* N.T. 12/3/80, 9, 12, 17, 18. Moreover, even if the delay were not justified, appellants have shown no prejudice, which is a prerequisite to the grant of a motion to dismiss. *Commonwealth v. DeRose,* 225 Pa. Superior Ct. 8, 307 A.2d 425 (1973) (mere fact of unjustified delay insufficient to justify dismissal; dismissal granted where defendant showed both lack of justification and prejudice). As the lower court noted, slip op. at 5, appellant Brunner produced an alibi witness, his girlfriend, to testify that he was tending his ice cream store on the date of the burglary. N.T. 12/5/80, 162. Although appellant Murphy testified at the pre-trial hearing that he could not remember where he was on the day of the burglary, N.T. 12/3/80, 46, failure to remember the events of the day in question is not by itself enough to show prejudice. *Commonwealth v. Sanders, supra* (SPAETH, J., concurring op.).

The second common argument is that the lower court erred in not suppressing evidence of appellants' prior convictions, thereby effectively precluding each of them from taking the stand in his own defense. Appellant Brunner had been convicted of burglary the previous year, Appellant's Brief at 11 (Brunner), and appellant Murphy had been convicted of retail theft and several counts of robbery in 1979, Appellant's Brief at 12 (Murphy). The lower court

ruled that these convictions would be admissible to impeach appellants' credibility. N.T. 12/4/80, 24–28.

In *Commonwealth v. Roots,* 482 Pa. 33, 393 A.2d 364 (1978), the Supreme Court listed five factors that should be considered in determining whether a prior conviction is admissible for impeachment. They are:

1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; [4] 2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; 3) the age and circumstances of the defendant; 4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and 5) the existence of alternative means of attacking the defendant's credibility.

*Id.,* 482 Pa. at 39, 393 A.2d at 367.

In the footnote the Court added:

[4.] Here the age of the prior conviction should be considered. Also the nature of the prior offense must be taken into account (e.g. a larceny accomplished by stealth or misrepresentation bears more directly upon veracity than a taking by force, thus the argument for admission is stronger for the former than the latter).

*Id.,* 482 Pa. at 39 n. 4, 393 A.2d at 367 n. 4.

The lower court ruled that evidence of appellant Brunner's prior conviction for burglary would be admissible primarily on the basis of factor four. In its opinion the court explains its ruling by saying, "In the situation before us, the prosecution's case was premised almost entirely on the testimony of the defendant's accomplice in crime, Alice Maxwell. If Alice Maxwell's testimony was not believed by the jury

the Commonwealth clearly would not have had a case." Slip op. at 7.

We agree that factor four supports the lower court's ruling. The Commonwealth's case against appellant Brunner did depend on the credibility of Ms. Maxwell. Moreover, the conviction did impeach appellant Brunner's credibility, for burglary is by definition accomplished by stealth, and it was only one year old. Appellant suggests that he could have been impeached by showing that "his recollection of the day in question was extremely vague as evidenced by his testimony at the pre-trial hearings," Appellant's Brief at 12 (Brunner), but it is doubtful how effective that would have been. We therefore find that the lower court did not abuse its discretion in ruling that evidence of the conviction would be admissible. *Commonwealth v. Herman,* 271 Pa. Superior Ct. 145, 412 A.2d 617 (1979) (year old conviction for burglary admissible to impeach defendant since Commonwealth's case consisted of testimony of one witness and alibi was produced at trial).

For the same reasons we find that neither did the lower court abuse its discretion in ruling that evidence of appellant Murphy's conviction for retail theft would be admissible. Although it is true that his convictions for robbery did not bear directly on his veracity, since robbery is a crime of force, *see Commonwealth v. Roots, supra,* 482 Pa. at n. 4, 393 A.2d at 367 n. 4, the Commonwealth did not seek to use those convictions, N.T. 12/4/80, 25, but rather sought to introduce only the conviction for retail theft, which would impeach credibility. We therefore need not consider the soundness of the lower court's ruling that evidence of the robbery convictions would also have been admissible.

The last common argument is that the evidence was insufficient to support the burglary convictions. In deciding sufficiency, we must view the evidence in the light most favorable to the Commonwealth, since it won the verdict below. It is not our function, but the jury's, to pass upon the credibility of the witnesses and to weigh their testimony.

*Commonwealth v. Lawton,* 272 Pa. Superior Ct. 40, 414 A.2d 658 (1979). Thus viewed, the evidence is as follows:

Alice Maxwell testified that she had lived with appellant Murphy, and knew appellant Brunner because he was a friend of Murphy's. N.T. 12/4/80, 60. She said that the three of them had burglarized a house on August 10, 1979, *id.* 61, and described in detail how they had cruised around looking for a suitable house, eventually choosing the Fries home, *id.* 62–64. She also testified that she and Murphy had remained in the car, and that Brunner, after hiding in the bushes around the house with a pillowcase, returned with a pillowcase full of a "jewelry box, camera, and a couple of guns." *Id.* 65–70.[2]

Ms. Maxwell also testified that she sold the camera equipment at Zern's Market, using the name Debbie Souder, while appellant Murphy waited in the car. *Id.* 75–6. Mr. Zimmers, of Zern's testified that he bought the camera from her. N.T. 12/5/80, 119.

Trooper Kline testified that a search of appellant Murphy's home revealed the jewelry and the jewelry box taken from the Fries home. *Id.* 128. The jewelry box contained a social security card in Murphy's name, and an identification card and a fishing license in the name of Christopher Souder. *Id.* 128–131.

The gist of appellants' argument that this testimony was insufficient to support their convictions is that the Commonwealth's case depended on the testimony of their accomplice, Alice Maxwell. (Appellant Brunner also points to the fact that he presented an alibi witness, one Marie Minotto, who testified that she was his girlfriend and that on the day of the burglary he was working in an ice cream parlor.) However, the uncorroborated testimony of an accomplice may be sufficient evidence to support a conviction, *Commonwealth v. Cristina,* 481 Pa. 44, 391 A.2d 1307 (1978), *cert. denied,* 440 U.S. 925, 99 S.Ct. 1255, 59 L.Ed.2d 479

---

2. Mr. Fries testified that he had discovered these items missing from his home on August 10, 1979, thus establishing the corpus delicti. *Id.* 43–46.

(1979); *Commonwealth v. Barnhart*, 290 Pa. Superior Ct. 182, 434 A.2d 191 (1981), provided the jury is properly charged, *Commonwealth v. Upshur*, 488 Pa. 27, 410 A.2d 810 (1980) (error not to give accomplice charge where evidence against defendant was testimony of accomplice); *Commonwealth v. Larew*, 289 Pa. Superior Ct. 34, 432 A.2d 1037 (1981) (accomplice testimony must be scrutinized carefully and corrupt source charge given).[3] Here, appellants do not argue, nor could they, that the jury was not charged on the corrupt source doctrine. N.T. 12/4/80, 190, 194–195. The jury was entitled to accept Ms. Maxwell's testimony (and to reject Ms. Minotti's). On that view, the evidence was sufficient to support the convictions.

 Appellant Brunner argues that the lower court erred in denying his motion to sever. He claims that "the only testimony which inculpated the appellant was that of Alice Maxwell, a/k/a Debby Souder . . . . [and] [g]iven this situation, the appellant was prejudiced by the consolidation because the jury could reasonably assume that he was guilty 'by association' with his co-defendant." Appellant's Brief at 13 (Brunner). However, while it is true that the Commonwealth's case against appellant Brunner rested on Ms. Maxwell's testimony, *see* N.T. 12/5/80, 136 (Trooper Kline), this does not mean that the lower court abused its discretion in not granting a severance for appellant Brunner. Although prejudice to the defendant is an important consideration in deciding whether to grant a severance, *see Commonwealth v. Tolassi*, 489 Pa. 41, 49, 413 A.2d 1003, 1007 (1980), it is not an abuse of discretion to deny severance where the actions of the co-defendant were in concert and for one criminal purpose, and the same witnesses are involved. *Commonwealth v. Norman*, 272 Pa. Superior Ct. 300, 415 A.2d 898 (1979); *Commonwealth v. Guess*, 266 Pa. Superior Ct. 359, 376 n. 13, 404 A.2d 1330, 1338 n. 13 (1979); *Commonwealth v. Garcia*, 261 Pa. Superior Ct. 296, 396 A.2d 406 (1978). *See*

---

**3.** As to appellant Murphy, Ms. Maxwell's testimony was not uncorroborated, since physical evidence—the missing jewelry and jewelry box—was discovered at his and Ms. Maxwell's home.

*also Commonwealth v. Iacino,* 490 Pa. 119, 415 A.2d 61 (1980).

Appellant Murphy argues that the lower court erred (1) in denying his motion for a change of venue; (2) in denying his motion to suppress use of his alias; (3) in admitting into evidence several exhibits; and (4) in denying his motion for a mistrial. The opinion of the lower court adequately responds to the first three of these arguments, and we see no need to discuss them further. However, we have concluded that the lower court did err in denying appellant Murphy's motion for a mistrial.

Appellant Murphy argues that he was entitled to a mistrial when Alice Maxwell testified that he had "jumped parole." This testimony occurred under direct examination by the prosecutor:

BY MR. BAILEY:

Q. Miss Maxwell, what if any names did Mr. Murphy use, aside from Woodrow Wilson Murphy?

A. Christopher Souder.

Q. Did he ever tell you why he used that name?

MR. EGOVILLE: Objection.

THE COURT: What is the objection?

MR. EGOVILLE: He is asking the witness for a conclusion, Your Honor.

THE COURT: He is asking the witness to give him a statement which was used by the defendant. The defendant is here. The objection is overruled.

MR. EGOVILLE: Maybe I misunderstood.

MR. BAILEY: I will restate the question for Mr. Egoville.

THE COURT: Read the question back.

THE REPORTER: (Reading) Did he ever tell you why he used that name? (End of Reading)

MR. EGOVILLE: I'm sorry, Your Honor.

THE COURT: You may answer the question.

THE WITNESS: Well, when we had first gotten the name was because—

THE COURT: Just what he told you.

THE WITNESS: Yes, because he had jumped parole previous to this.

MR. EGOVILLE: Your Honor, may I see you at side bar.

(The following conference was held between Court and Counsel at side bar.)

MR. EGOVILLE: Your Honor, certainly I was not aware of what kind of an answer was going to come out of that witness, but I strongly suspect—

THE COURT: Mr. Egoville, I don't want to hear suspicions. Are you making a motion?

MR. EGOVILLE: I am making a motion for a mistrial.

THE COURT: The motion is disallowed. If that is what he told her she can testify to that. He told her why he was going to use that name.

MR. EGOVILLE: Your Honor—

THE COURT: Mr. Egoville.

MR. EGOVILLE: I understand.

(The side bar conference was concluded.)

N.T. 12/4/80, 80–83.

In its opinion, the lower court explains its ruling as follows:

Where there is a legitimate basis for the introduction of prior conviction evidence other than to show a predisposition to commit the crime evidence of a prior criminal conviction is admissable. *Commonwealth v. Spruill,* 480 Pa. 601 [391 A.2d 1048] (1978). The legitimate basis here was the explanation as to why the defendant used an alias. In *Commonwealth v. Wojdakowski,* 161 Pa.Super. 250 [53 A.2d 851] (1947). The Superior Court specifically held that it was permissible for the prosecution to show the circumstances under which the defendant assumed an alias. While unfortunately such an interrogation might infer prior criminal activity on the part of the defendant, this evidence sought is independ[e]ntly relevant toward proving the existence of the alias, the ascertainment of

which is important to the Commonwealth's case for purposes of establishing that the defendant committed the crime charged. The identity of the person who committed the crime is one of the stated exceptions to the general rule against the admissibility of evidence which would infer a prior conviction. *Commonwealth v. Patterson* [247 Pa.Super. 199], 372 A.2d 7 (1977).

In light of the above discussion, Alice Maxwell's explanation of why the defendant assumed an alias was independ[e]ntly relevant testimony and did not give rise to a mistrial.

Slip op. at 7–8.

We cannot subscribe to this reasoning.

■ The lower court is correct in saying that there are occasions on which evidence of a defendant's prior conviction is admissible. However, these occasions are narrowly limited. Evidence of a prior crime is admissible if it tends to prove: (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan embracing the commission of crimes so related to each other that proof of one tends to establish the other, or (5) the identity of the person charged with the commission of the crime on trial, "in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other." *Commonwealth v. Morris,* 493 Pa. 164, 175, 425 A.2d 715, 720 (1981); [4]

---

**4.** *Commonwealth v. Wojdakowski,* 161 Pa. Superior Ct. 250, 258, 53 A.2d 851 (1947), cited by the lower court, would appear to support the lower court's ruling, for it held that the witness's statement that the defendant used an alias because "he say he's on parole and he no want to go by that name" did not justify the removal of a juror. The court reasoned that the evidence of the defendant's alias was vital to the Commonwealth's case and not deliberately elicited. However, we believe that *Wojdakowski* has been overruled *sub silentio* by modern decisions, *see* discussion *infra* at 720–721, and was decided before the law regarding the admissibility of evidence of an accused's prior criminal activity had been developed. *See Commonwealth v. Boulden,* 179 Pa. Superior Ct. 328, 116 A.2d 867 (1955) (discussing ALI suggestions regarding admissibility of evidence of prior criminal conduct and listing nine such exceptions to its admissibility, including when insanity is a defense and when the death penalty is a possibility).

*Commonwealth v. Coleman,* 289 Pa. Superior Ct. 221, 433 A.2d 36 (1981). The reason for these narrow limitations is the great prejudice that evidence of a prior conviction is "bound to create" in the minds of the jurors. *Commonwealth v. Groce,* 452 Pa. 15, 19, 303 A.2d 917, *cert. denied,* 414 U.S. 975, 94 S.Ct. 290, 38 L.Ed.2d 219 (1973). *Accord, Commonwealth v. Spruill,* 480 Pa. 601, 391 A.2d 1048 (1978) ("Evidence of prior criminal activity is probably only equalled by a confession in its prejudicial impact upon a jury."); *Commonwealth v. Stokes,* 279 Pa. Superior Ct. 361, 421 A.2d 240 (1980) (prejudice so great it strips defendant of presumption of innocence).

The lower court seeks to fit Ms. Maxwell's statement that appellant Murphy used an alias "because he had jumped parole previous to this" into the fifth exception, regarding the identity of the accused. In its support, the court cites our decision in *Commonwealth v. Patterson,* 247 Pa. Superior Ct. 199, 372 A.2d 7 (1977). However, on further appeal, the Supreme Court reversed our decision, *Commonwealth v. Patterson,* 484 Pa. 374, 399 A.2d 123 (1979), and it is clear from the Court's decision that the fifth exception is not applicable to this case.

In *Patterson,* a majority of this court held that on a charge of rape, evidence that an earlier rape had occurred in the same area, at the same time of night, and had been perpetrated by a black man wearing sunglasses, was admissible to show that the accused, also a black man, was the person who committed the second rape. The dissenters, HOFFMAN, J., joined by JACOBS and SPAETH, JJ., pointed out dissimilarities between the two rapes and would have held the two crimes not sufficiently similar to be relevant to the identity of the perpetrator. Their view was that the fifth exception is available only when the crimes are so distinctive that they can be called "signature crimes." On appeal, the Supreme Court followed the dissent's reasoning and held the evidence of the earlier rape inadmissible, holding that the fifth exception "requir[es] something more than the commission of the same class of crime, such as theft,

namely something unusual or distinctive 'as to be like a signature.' " *Id.*, 484 Pa. at 378 n. 6, 399 A.2d at 126 n. 6.

■ Here, the fact that appellant Murphy had been on parole before did not offer any "logical connection between the crimes" tending to prove that he was the person who committed the Fries burglary. We do not know from Ms. Maxwell's statement either for what crime he was on parole, or the circumstances of that crime. Nothing "like a signature" appears. Her statement, therefore, could not possibly constitute evidence that would tend to prove that appellant Murphy was the perpetrator of the Fries burglary.

■ Since the statement does not fit into the fifth, or any other, exception to the rule against the admission of evidence of prior criminal activity, the issue becomes whether the jury could have reasonably inferred from it that appellant Murphy had engaged in prior criminal activity. *Commonwealth v. Bowermaster,* 297 Pa. Superior Ct. 444, 444 A.2d 115 (1982). This issue, however, need not detain us. Not only could the jury have reasonably inferred that appellant Murphy had been involved in prior criminal activity from the statement that he had "jumped parole." There was nothing else the statement could mean.[5]

Sometimes prejudice can be cured or warded off by prompt and decisive cautionary instructions. *Commonwealth v. Richardson,* 496 Pa. 521, 437 A.2d 1162 (1981); *Commonwealth v. Williams,* 470 Pa. 172, 368 A.2d 249 (1977). Here, no cautionary instructions were given. It is true that defense counsel did not request any, but he is not to be faulted for that. The lower court made plain, as the transcript we have quoted on page 719, *supra,* shows, that it saw no error in admitting the evidence, and for counsel to request cautionary instructions would have been futile. Furthermore, the evidence was of such a nature that cautionary instructions would not have cured the prejudice. *Commonwealth v. Washington,* 488 Pa. 133, 411 A.2d 490

---

**5.** In this respect, this case is different from *Bowermaster,* where the majority and dissent disagreed as to the clarity of the reference to prior criminal activity.

(1979) (statement that defendant extradited to United States Penitentiary not curable); *Commonwealth v. Spruill, supra* (statement that witness had "buried a couple of bodies" for defendant not curable); *Commonwealth v. Durant,* 268 Pa. Superior Ct. 191, 407 A.2d 1311 (1979) (statement that witness did not know defendant "was out of jail" not curable).

██ The only remaining issue is whether the improper admission of Ms. Maxwell's statement constituted harmless error. The law in this area is far from clear.

After observing that the determination of whether an error was harmless "is often made with little or no analysis," the Supreme Court in *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978), set forth a two-step procedure by which this determination should be made:

> A reviewing court first determines whether the untainted evidence, considered independently of the tainted evidence, overwhelmingly establishes the defendant's guilt. If " 'honest, fair minded jurors might very well have brought in not guilty verdicts,' an error cannot be harmless on the basis of overwhelming evidence." [Citations omitted] Once the court determines that the evidence of guilt is overwhelming, it then decides if the error was so insignificant by comparison that it could not have contributed to the verdict.
>
> *Commonwealth v. Story,* 476 Pa. 391, 413, 383 A.2d 155, 166 (1978).

Having gone through this procedure, the reviewing court must be satisfied that "it is clear beyond a reasonable doubt that the error [was] harmless;" this conclusion is not to be arrived at lightly." *Id.,* 476 Pa. at 413, 383 A.2d at 166 (*quoting Commonwealth v. Davis,* 452 Pa. 171, 178–79, 305 A.2d 715, 720 (1973)).

However, the Supreme Court has not used this procedure to determine whether an error was harmless in cases involv-

ing references to prior criminal activity of the accused. For example, in *Commonwealth v. Spruill,* 480 Pa. 601, 391 A.2d 1048 (1978), decided after *Story,* the Court held that a motion for mistrial should have been granted when a Commonwealth witness stated that he had "buried a couple of bodies" for the accused. The Court stated that "[e]vidence of prior criminal activity (particularly of the type of conduct suggested by this statement) is probably only equalled by a confession in its prejudicial impact upon a jury." *Id.* 480 Pa. at 606, 391 A.2d at 1050. In holding that the error was not harmless, the Court said:

> We are satisfied that the result of this evidence was to unjustifiably blacken the character of the appellant in the minds of the jury and to show his propensity to commit the crime charged. We will not permit this type of testimony to overcome the presumption of innocence. *Id.,* 480 Pa. at 607, 391 A.2d at 1050.

Justice LARSEN dissented on the harmless error point. He maintained that the evidence of the accused's guilt was "overwhelming," and stated that the evidence included two eyewitnesses, who were friends of the accused, and "ten other witnesses who supported this proposition of guilt." *Id.,* 480 Pa. at 607, 391 A.2d at 1051. He noted, too, that no witnesses had testified on the accused's behalf. Without citing *Story,* he argued that the majority had failed to use the "balancing of evidence versus the error" test. *Id.* 480 Pa. at 607, 391 A.2d at 1051.

Later, in *Commonwealth v. Washington,* 488 Pa. 133, 411 A.2d 490 (1979), the Court again ignored *Story's* two-step analysis. In *Washington,* a Commonwealth witness stated that he had extradited the accused from Leavenworth Penitentiary. The Court held that a motion for mistrial should have been granted on the basis of this statement, for it indicated to the jury that the accused had engaged in prior criminal activity. In holding that the error was not harmless, the Court did not discuss the other untainted evidence, but said:

The Commonwealth also urges that the testimony was harmless since the jury could have inferred Washington was in custody in Leavenworth Penitentiary on the present charges. One would be quite naive to subscribe to this argument. More importantly, in determining if the introduction of the challenged testimony constitutes reversible error, the controlling question is whether the jury could reasonably infer therefrom that the accused had engaged in other unrelated criminal activity. *Commonwealth v. Allen,* 448 Pa. 177, 292 A.2d 373 (1973). We have no doubt that this is such a case.

*Id.* 488 Pa. at 138, 411 A.2d at 492.

This was indeed the holding of *Commonwealth v. Allen, supra,* which stated that "the presumed effect of such evidence [of prior criminal activity] is to predispose the minds of the jurors to believe the accused guilty, and thus effectually strip him of the presumption of innocence," *id.* 448 Pa. at 182, 292 A.2d at 375, *quoting, Commonwealth v. Trowery,* 211 Pa. Superior Ct. 171, 173–74, 235 A.2d 171, 172 (1967), which, of course, pre-dated *Commonwealth v. Story, supra.*[6]

In these circumstances we are uncertain whether to follow *Story*'s two-step analysis or to follow *Washington*'s and *Allen*'s. No doubt in an appropriate case the Supreme Court will clarify the law. Meanwhile, as it happens, our uncertainty is of no consequence, for by either analysis, the error was not harmless.

If we follow *Washington*'s and *Allen*'s analysis, the issue is "whether the jury could reasonably infer therefrom [Ms. Maxwell's testimony] that the accused had engaged in other

**6.** Another recent case following *Allen*'s and ignoring *Story*'s formulation is *Commonwealth v. Nichols,* 485 Pa. 1, 400 A.2d 1281 (1979). In that case, the reference involved the accused's conduct at a line-up. The Court did not review the untainted evidence or decide if the error was insignificant, but said only, "Since the jury could reasonably have inferred Nichols was involved in other unrelated crimes from the evidence relating the March 30th lineup, prejudice resulted, and a new trial must be granted. *Commonwealth v. Riggins,* [478 Pa. 222, 386 A.2d 520 (1978), citing *Allen* with approval]; *Commonwealth v. Banks,* [454 Pa. 401, 311 A.2d 576 (1973)]." *Id.,* 485 Pa. at 6, 400 A.2d at 1283.

unrelated criminal activity." As we have already observed, there was nothing *else* the jury could have inferred.

If we follow *Story*'s analysis, we start by determining whether the untainted evidence was "overwhelming." Here, the untainted evidence was Ms. Maxwell's testimony implicating appellant, and the evidence that the stolen jewelry and jewelry box were found in the house where Ms. Maxwell and appellant lived. We cannot say that Ms. Maxwell's testimony was "overwhelming" evidence; to characterize the testimony of an admitted accomplice—a "corrupt" or "polluted" source—as "overwhelming" would make no sense. Nor was her testimony made overwhelming by the evidence about the jewelry, for she and appellant shared the house where the jewelry was found; the location of the jewelry did not identify which occupant of the house had stolen it. "[H]onest, fair minded jurors" might have rejected Ms. Maxwell's testimony as that of an accomplice, and had they done so, they would have had to return a not guilty verdict, for the evidence about the jewelry by itself proved very little. Since the untainted evidence was not overwhelming, we never reach the second step of *Story*'s analysis.

Even if we did reach the second step, the result would be the same, for we could not say that "the error [in admitting her statement about appellant jumping parole] was so insignificant by comparison [with the other evidence] that it could not have contributed to the verdict." The inquiry here would be similar to that made in *Washington* and *Allen*. The clearer or more egregious a reference, such as "I buried a couple of bodies for him," the less likely it is that the reference was "insignificant." Here, the reference that appellant "had jumped parole" was very clear indeed. Furthermore, the fact that he had "jumped" parole could only have been especially damaging, for it labeled appellant not only a convict, but a convict who took advantage of the liberty represented by parole.

As to appellant Brunner, the judgment of sentence is affirmed.[7] As to appellant Murphy, the judgment of sentence is reversed and the case is remanded for a new trial.

CAVANAUGH, J., files a concurring and dissenting opinion.

CAVANAUGH, Judge, concurring and dissenting:

I agree that the evidence as to "jumping parole" was unduly prejudicial and warrants the grant of a new trial for the appellant Murphy. In my view, however, it is illogical to grant a new trial to Murphy and to affirm the judgment of sentence of Brunner.

Under the Commonwealth's evidence, both Murphy and Brunner were co-actors in the burglary. The primary evidence against both defendants was rooted in the testimony of Alice Maxwell. Neither defendant chose to testify following the lower court's denial of their pre-trial motions to suppress their prior criminal convictions and therefore no evidence of their prior criminal convictions was admitted into evidence. In actual fact, however, the jury had before it additional evidence upon which to rely in convicting Murphy. The Commonwealth presented the physical evidence that the victim's stolen jewelry box was found in Murphy's residence.

In addition, albeit improperly, the jury had before it that Murphy had "jumped parole." To determine that this single piece of improperly admitted evidence entitles Maxwell to a new trial and at the same time affirm the conviction of Brunner, which was based solely upon the testimony of Ms. Maxwell, is in my opinion illogical since it is totally unrealistic to assume that the taint of the Murphy evidence, that both properly and improperly admitted, did not carry over to his co-defendant's criminal liability in the eyes of the jury.

7. We recognize the force of Judge CAVANAUGH's position that appellant Brunner should likewise be granted a new trial, but we note that Brunner did not on this appeal raise the issue of the admissibility of the "jumped parole" testimony.